**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert G. JOSEPH,
Defendant–Appellant.**

No. 89–3301.

United States Court of Appeals,
Sixth Circuit.

Argued April 3, 1990.

Decided Sept. 19, 1990.

Kathleen Brinkman, Asst. U.S. Atty. (argued), Cincinnati, Ohio, for plaintiff-appellee.

James E. Burke, III (argued), Keating, Muething & Klekamp, Cincinnati, Ohio, Michael D. Monico, Barry A. Spevack, Monico, Pavich & Spevack, Chicago, Ill., for defendant-appellant.

Before KEITH and NELSON, Circuit Judges, and CHURCHILL, Senior District Judge.*

## PER CURIAM.

This is an appeal from a judgment of conviction and sentence entered after the defendant, a Cincinnati businessman, pleaded guilty to a charge of making a false statement to the Small Business Administration and a separate charge of filing a false federal income tax return. At issue is the propriety of an order of restitution constituting one of the conditions of a five-year period of probation imposed in connection with the tax violation. The order required the defendant to make restitution to the Small Business Administration in the amount of $318,000. Among the questions presented are these:

— Whether restitution was ordered in connection with the wrong offense;

— Whether the dollar amount of the restitution order was adequately supported by the district court's factual findings; and

— Whether the district court abused its discretion by requiring the defendant to execute a consent judgment and security agreements for periodic payments extending beyond the period of probation.

Concluding that the restitution order was defective in several respects, we shall remand the case for resentencing.

I

In 1978, in connection with the acquisition of the George White Oldsmobile dealership by a corporation known as R.J. Oldsmobile, the latter company assumed certain George White Oldsmobile indebtedness that had been guaranteed by the federal government's Small Business Administration. The SBA had secured Mr. White's personal guarantee of his company's indebtedness, but for reasons not disclosed on the record, and notwithstanding the apparent insolvency of the dealership, the SBA took the unusual step of releasing Mr. White.

Defendant Robert J. Joseph, the owner of R.J. Oldsmobile, personally guaranteed a portion of the indebtedness when the loan was assumed, and he guaranteed the balance a year later in consideration of a restructuring of the loan. Although the business seems to have been a losing proposition from the beginning, R.J. Oldsmobile obtained a new SBA-guaranteed loan in 1980. The loan was guaranteed by Mr. Joseph in full.

R.J. Oldsmobile went out of business a month or so after obtaining the new loan. The assets of the dealership were sold, and the new loan was reduced by the net amount realized on the sale. Neither loan was totally extinguished, and Mr. Joseph remained personally obligated to the SBA for approximately $340,000, exclusive of interest.

* The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

Mr. Joseph had a variety of other debts, the total amount of which, he claims, far exceeded his assets. Mr. Joseph presented evidence to show that if he had resorted to bankruptcy in the summer of 1983, at which time he was negotiating a compromise with the SBA, the agency would have received less than $34,000.

Mr. Joseph did not declare bankruptcy, and he eventually settled his liability to the SBA for a cash payment of $10,000. On June 17, 1983, in the course of the settlement negotiations, Mr. Joseph gave the SBA a letter in which he (1) falsely stated that he no longer had interests in certain named assets, (2) falsely concealed his ownership of certain other assets, and (3) falsely stated that his interest in a certain limited partnership was valueless. Government evidence indicates that the value of the concealed and misrepresented property interests totaled approximately $383,000.

In a commercial loan application submitted to Home State Savings Bank in October of 1983, Mr. Joseph put his net worth at $328,000, subject to contingent liabilities of $195,000. Although it seems unlikely that Mr. Joseph actually had a positive net worth at this time, the misrepresentation (if it was a misrepresentation) to Home State would have had no bearing on the present appeal but for the fact that the district court based the amount of its restitution order on the Home State document.

The settlement with the SBA was concluded in February of 1984. Three years later a private investigator alerted the FBI to the possibility that there had been irregularities in Mr. Joseph's conduct of his financial affairs. The investigator's tips led to a five-count indictment against Mr. Joseph in June of 1988.

Joseph subsequently entered into a plea agreement pursuant to which he pleaded guilty to Count One of the indictment (making false statements to the SBA) and Count Five (failing to report certain income on a federal income tax return filed in 1983). The plea agreement acknowledged that the court could order restitution with respect to each of these counts.

The government presented a written statement of its case in connection with the preparation of a presentence investigation report by a probation officer. Defendant Joseph submitted a counterstatement. Mr. Joseph contended that "the settlement [with the SBA] could not have been materially different if all the true facts were known," and he further contended that the false income tax return "did not result in a financial loss to the IRS, because Mr. Joseph did not report many deductions that more than offset the omitted income."

The government did not ask for restitution to the IRS, but did ask that restitution be ordered in the full amount of the principal indebtedness (approximately $340,000) charged off by the SBA. Mr. Joseph argued for a restitution order of $24,000, a figure arrived at by subtracting $10,000 (the settlement amount actually received by the SBA) from $34,000 (the amount the SBA allegedly would have received had Joseph filed for bankruptcy instead of entering into the settlement.)

The presentence investigation report set forth a detailed analysis of the defendant's ability to pay. According to this analysis, Mr. Joseph's necessary living expenses exceeded his net salary by approximately $60.00 per month, while his unsecured debts exceeded his assets by more than $1.2 million. "Based upon the defendant's financial profile," the report concluded, "it appears that at the present time he does not have the ability to remit full restitution, nor does he have the ability at the present time to pay a fine."

In imposing sentence on Mr. Joseph, the district court found that "he probably was insolvent in both the equity and bankruptcy sense at the time the settlement was negotiated with the SBA in the early 1980s...." Mr. Joseph was still insolvent, the court found, at the time of sentencing: "We are satisfied that the defendant has a negative net worth[,] and therefore no fine is imposed." The court nonetheless ordered restitution in the amount of $318,000, "which is the amount of the net worth he disclosed [to Home State] on a financial statement shortly after the events in-

volved[,] less the $10,000 he paid the SBA...."

On Count One of the indictment (false statements to the SBA), the court sentenced Mr. Joseph to imprisonment for a period of two years. On Count Five (the false tax return), the court imposed a three-year suspended sentence and probation for five years. One of the conditions of probation, as announced from the bench, was this:

> "The defendant shall pay restitution in the amount of $318,000, ... which amount will fairly compensate the SBA for any unpaid advances it made, and ... *defendant and the SBA [will] execute forthwith a consent judgment in favor of the SBA in such amount*, which shall be in full settlement of all claims of the SBA against defendant; *and defendant will execute security agreements to secure its payment during and after the period of probation*. The payment of such restitution shall be by periodic payments during the period of probation in the amounts and in accordance with the payment schedule to be established by the Probation Department, which schedule may be adjusted by the Probation Department as it determines appropriate during the period of probation." (Emphasis supplied.)

The foregoing was incorporated in a written "judgment and probation/commitment order" from which Mr. Joseph perfected a timely appeal.

## II

■ We turn first to the propriety of ordering, as a condition of probation imposed for the IRS offense, that restitution be made to a different agency in connection with a different offense. Because both offenses were committed before the effective date of the Sentencing Guidelines, we review the sentence for abuse of discretion. *United States v. Barbara*, 683 F.2d 164, 166 (6th Cir.1982). An error of law constitutes an abuse of discretion. *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.*, 753 F.2d 1354, 1356 (6th Cir.), *cert. dismissed*, 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985).

■ Either of two different statutes might have authorized a restitution order: the Federal Probation Act, 18 U.S.C. § 3651, and the Victim and Witness Protection Act ("VWPA," or "Victim Act"), 18 U.S.C. §§ 3579, 3580.[1] "Since the VWPA and the Federal Probation Act require different factual inquiries, the sentencing judge should specify in the record under which Act he imposes any restitution. Such disclosure would ease determination of the propriety of ordering restitution in particular cases." *United States v. Shackelford*, 777 F.2d 1141, 1146 n. 4 (6th Cir. 1985), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986). In this case the district court did not initially specify the act under which it was proceeding. In ruling on a subsequent motion to modify the sentence, however, the court declared that it had used the Victim Act. *United States v. Joseph*, No. CR–1–88–55, slip op. at 2 (S.D.Ohio Nov. 8, 1989) (order). We accept the court's statement on this.[2]

Although the Victim Act does not require that a restitution order be tied to a sentence of probation, it permits the court (subject to an exception not pertinent here) to order restitution only "when sentencing

---

1. Effective November 1, 1986, these provisions of the Victim Act were revised and renumbered as 18 U.S.C. §§ 3663, 3664. We shall continue to refer to the text and codifiction as they were at the time of Mr. Joseph's offenses.

2. Mr. Joseph contends, citing *S & E Shipping Corp. v. Chesapeake & Ohio Railway Co.*, 678 F.2d 636, 641 (6th Cir.1982), that we should not consider the subsequent ruling because the motion was filed after the notice of appeal. *S & E Shipping* is not on point, however, because there we found the district court erred by deciding on its own to enter into the record evidence of certain stipulations filed after the notice of appeal. The district court in the present case ruled on the motion to modify only after we ordered briefing of the appeal held in abeyance pending such a ruling. The district court retains jurisdiction to proceed with matters in aid of the appeal. *Cochran v. Birkel*, 651 F.2d 1219 (6th Cir.1981), *cert. denied*, 454 U.S. 1152, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1982). The ruling clarified the intended bias for the restitution order, which we find helpful in considering this appeal.

a defendant convicted of an offense under [Title 18 of the United States Code]....." The tax violation for which Mr. Joseph was given probation conditioned on restitution constituted a violation of Title 26 of the Code, not Title 18. We think it clear, therefore, that the restitution order was not authorized by the Victim Act. (Neither, in our opinion, would the order have been authorized by the Probation Act, because the offense for which probation was imposed was not the offense for which restitution was ordered. See *United States v. Kuna ("Kuna I")*, 760 F.2d 813, 820 (7th Cir.1985).)

■ In its ruling on Mr. Joseph's motion to modify his sentence, the district court declared that if this court should reverse the sentence because of the fact that probation had not been ordered in connection with the SBA offense, on remand the prison sentence would be switched to the tax offense, and probation—with restitution— would be ordered for the SBA offense. Mr. Joseph argues that such a switch would be an unconstitutional enhancement of his sentence. We disagree: "The Constitution does not require that resentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *Bozza v. United States*, 330 U.S. 160, 166–67, 67 S.Ct. 645, 648–49, 91 L.Ed. 818 (1947). An approach similar to that proposed by the district court was used after the remand in *Kuna I*, 760 F.2d 813. Mr. Kuna had been convicted on five counts of mail fraud and an unrelated count of filing a false statement with a government agency. Initially, Mr. Kuna was ordered to make restitution to the mail fraud victims as a condition of probation on the false statement count. On remand, the district court switched the sentence of probation · to one of the mail fraud counts. The Seventh Circuit affirmed, approving a new sentence that carried out the district court's original intent without violating the Probation Act. *United States v. Kuna*, 781 F.2d 104, 106 (7th Cir.1986).

Mr. Joseph contends, however, that the order requiring him to make restitution to the SBA suffers from a variety of defects that cannot be cured simply by switching the sentence of probation from the tax count to the SBA count. We turn to these matters next.

### III

Rule 32(c)(3)(D), Fed.R.Crim.P., provides that if there are alleged to be factual inaccuracies in the presentence investigation report, the court shall, as to each matter controverted, either make a finding as to that allegation or make a determination that no such finding is necessary because the matter will not be taken into account in sentencing. Mr. Joseph alleged that the presentence report was inaccurate as to the extent to which the SBA's loss was attributable to his misconduct. In the first place, he contended, his guaranty of the loan assumed by R.J. Oldsmobile was unenforceable because he himself received no consideration for the assumption and, as he hinted, the SBA led him down the primrose path in signing on to a business deal that was doomed from the start. In the second place, he argues, his financial condition would have made it impossible for the SBA to recover more than $34,000 from him at or after the time he made the false statements concerning his assets.

However irresponsible the SBA's credit decisions may have been, it is far from clear that Mr. Joseph did not get what he bargained for from the SBA when his company bought the dealership and he assumed the loan. We should have thought it fairly obvious that Mr. Joseph received consideration in a legal sense for the personal guaranties he gave at the time of assumption and when the loan was restructured. The district court evidently thought otherwise, however, expressing itself thus at the time of sentencing:

"It appears that when the defendant acquired the George White Oldsmobile Dealership, the franchise may have been pledged and taken over by the SBA and transferred to the defendant in violation of the franchise agreement with General Motors. At the time, the George White Olds franchise was hopelessly insolvent and should have closed its doors. Thus,

there are serious questions as to whether defendant received any consideration for assuming the obligations of George White Olds. Further, there is some question about the propriety of the SBA's acquisition of the stock and the franchise and its transfer to the defendant under the circumstances;

\*　　\*　　\*　　\*　　\*　　\*

We're not convinced that the SBA suffered the loss it claims because there may not have been any consideration for the original loan that the defendant took over when he acquired the George White Olds franchise."

Although we are aware of no showing that General Motors cancelled the franchise because of anything done by the SBA, or that Mr. Joseph was entitled to rely on the SBA to evaluate the financial condition of George White Oldsmobile for him, perhaps it was the district court's thought that the SBA was equitably estopped somehow from enforcing the initial guaranties. In any event, it is difficult for us to reconcile the findings quoted above with the order of restitution.

No less problematic are the district court's findings on what Mr. Joseph's guaranties would have proved to be worth if, instead of working out a settlement, the agency had tried to enforce the guaranties:

"It appears from a recasting of the defendant's assets and liabilities that he probably was insolvent in both the equity and bankruptcy sense at the time the settlement was negotiated with the SBA in the early 1980s, even though he admittedly failed to list many of his assets exceeding the value $350,000, when providing financial statements to it, and in fact gave a financial statement to a bank some months later showing that he had a net worth of $328,000. That is the financial statement for the Homestate [sic] Bank."

\*　　\*　　\*　　\*　　\*　　\*

"[I]t appears today that even though the defendant lied about his assets when he settled with the SBA, there is little doubt that he may have been bankrupt at the time."

If Mr. Joseph was bankrupt when he lied about his assets to the SBA, and if the SBA could not have hoped to recover anything approaching $328,000, we do not understand how the misrepresentations could be thought to have cost the SBA that much.

■ If the district court adhers to its $318,000 figure on remand, it will have to clarify the findings on which the figure is based. Perhaps, as the government contends, Mr. Joseph's liabilities were only contingent, and perhaps the SBA could have recovered more than $34,000 in bankruptcy. It is for the district court to resolve these matters, based on evidence submitted by the parties. But to order restitution without properly determining the amount of the loss, based on accurate information, would constitute an abuse of discretion. *United States v. Mischler*, 787 F.2d 240, 247 (7th Cir.1986). And any restitution order imposed under the Victim Act must be "only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States*, 495 U.S. ——, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990).

■ The district court will also need to consider Mr. Joseph's ability or inability to pay any amount for which restitution is ordered. See *United States v. Mahoney*, 859 F.2d 47 (7th Cir.1988) (restitution order vacated where sentencing court disregarded defendant's inability to pay). The court does not seem to have believed that Mr. Joseph was telling the truth when, in October of 1983, he represented his net worth as being $328,000. Neither did the court find that Mr. Joseph had a positive net worth at the time of sentencing. On the contrary, as noted above, the reason the court decided not to impose a fine was that it was satisfied that the defendant had a negative net worth. Although indigency is not a bar to an order of restitution, *United States v. Mounts*, 793 F.2d 125, 128–29 (6th Cir.), *cert. denied*, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986), the financial resources and earning ability of the defendant must at least be considered in determining whether to order restitution under

the Victim Act. *United States v. Purther*, 823 F.2d 965, 969 (6th Cir.1987).

## IV

■ If restitution is ordered under the Victim Act, finally, the court may not require the defendant to execute a consent judgment or otherwise require him to secure payment "during and after the period of probation." Although the Victim Act provides that the defendant may be required to make restitution within a specified period or in specified installments, the Act goes on to provide as follows:

"The end of such period or the last such installment shall not be later than—

(A) the end of the period of probation, if probation is ordered;

(B) five years after the end of the term of imprisonment imposed, if the court does not order probation; and

(C) five years after the date of sentencing in any other case." 18 U.S.C. § 3579(f)(2).

See *United States v. Bruchey*, 810 F.2d 456 (4th Cir.1987), where the Court of Appeals for the Fourth Circuit held that it was error for the district court to exact a promissory note on which the victim could have brought suit for 21 years:

"The victim and defendant never 'agreed' on the terms of a promissory note and we conclude that the district could should not compel a defendant to sign such an 'agreement.' ...

By ordering the defendant to sign a promissory note on which payments would in all likelihood extend beyond her five years of probation, the district court accomplished indirectly what the statute forbids directly. The dangers of such disregard for the statutory requirements are not merely theoretical. 'Normal' criminal restitution remains within the equitable power of the judge who orders it; he can modify his order (or at least refuse to revoke probation for failure to comply) if the circumstances of the defendant change. When the court purports to order a particular schedule of payment extending beyond the period of the court's jurisdiction, however, the op-portunity for equitable adjustment ceases." *Id.* at 459–60.

The government cites § 3579(h), which provides: "An order of restitution may be enforced ... in the same manner as a judgment in a civil action." This subsection, however, does not repeal the time limits provided in subsection (f); it does not mean that any restitution order rendered under the Victim Act by a federal court in Ohio is enforceable for 21 years. *Cf.* 28 U.S.C. § 1962 (federal judgments enforceable to same extent as state judgments); 40 O.Jur.3d *Enforcement of Judgments* § 19 (1982) (domestic judgments enforceable for 21 years). The life of a restitution order is expressly limited by § 3579(f). If the SBA is dissatisfied with the amount of restitution recovered, it may pursue a civil action in which the defendant will be estopped from denying the essential allegations of the offense. See *Bruchey*, 810 F.2d at 461; 18 U.S.C. § 3580(e).

The sentence of the district court is VACATED, and the case is REMANDED to the district court for resentencing.