UNITED STATES of America, Plaintiff–Appellee,

v.

Helen L. LIVELY, a/k/a Helen Flugga, Defendant–Appellant.

No. 93–3788.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 2, 1993.

Decided March 28, 1994.

Randall E. Yontz (argued and briefed), Office of the U.S. Atty., Columbus, OH, for plaintiff-appellee.

Dennis C. Belli (argued and briefed), Columbus, OH, for defendant-appellant.

Before: KEITH and NORRIS, Circuit Judges; and ZATKOFF, District Judge.[*]

ZATKOFF, District Judge.

Defendant-appellant Helen L. Lively[1] appeals the criminal sentence and restitution order imposed on her by the district court. Lively raises the following issues in her appeal: (1) whether the district court abused

---

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1] Helen Lively also is known as Helen Flugga. Flugga is the last name of her common law husband, William Flugga.

its discretion when it sentenced her to a term of imprisonment, in lieu of home confinement; (2) whether the district court abused its discretion when it ordered her to make restitution to the victims of her offense in the amount of the retail price of the mail-order items, as opposed to the wholesale price; and (3) whether the district court abused its discretion when it concluded that she had the ability to pay the order of restitution.

The district court sentenced Lively to a term of six months imprisonment after Lively entered a plea of guilty to an one count information charging her with mail fraud. 18 U.S.C. § 1341. In addition, the district court ordered Lively to pay restitution in the amount of $30,963.54. Lively's timely appeal followed. We AFFIRM the incarceration portion of Lively's sentence and the use of the retail price of the mail-order items to establish the amount of restitution, but VACATE the order of restitution, and REMAND this cause to the district court on the limited issue of whether Lively has the ability to pay the restitution order.

## I.

The Postmaster of Russell's Point, Ohio, filed a report with the United States Postal Inspection Service indicating that Lively had been receiving numerous mail parcels under various fictitious names at Post Office Box 1175 ("P.O. Box 1175"), Russell's Point, Ohio. Although Lively's common law husband, William Flugga, rented P.O. Box 1175, the Postmaster advised the Postal Inspection Service that Lively also received mail at P.O. Box 1175.

A Postal Inspection Service's investigation revealed that Lively and her sister, Kathy Henson, devised and perpetuated a scheme to defraud mail order companies by having certain items [2] either mailed to their respective residences or mailed to P.O. Box 1175.

Lively and her sister employed various fictitious names when ordering the merchandise. They never paid for the merchandise. Instead, Lively and her sister would resell the merchandise at local flea markets.

The postal inspector assigned to the case directed inquires to approximately 450 mail order companies that had shipped merchandise to P.O. Box 1175. Fifty-one of the mail order companies responded to this inquiry and these companies noted that from August 1, 1990 through November 20, 1991, Lively and her sister had ordered, under fictitious names, merchandise with a retail value of $31,908.24.[3] It was determined that Lively used more than 50 fictitious names when ordering merchandise.

The 51 mail order companies also provided the postal inspector with 73 original order forms for the merchandise which Lively and her sister had ordered. Lively and her sister both submitted handwriting exemplars to the postal inspector.[4] These documents were sent to the postal inspector's crime laboratory for examination and comparison. Laboratory results revealed that Lively had executed 65 of the 73 mail order forms. The total retail value of the merchandise which Lively obtained through these 65 orders was $30,963.54.

On March 18, 1993, the United States Attorney for the Southern District of Ohio filed an one count information charging Lively with mail fraud, in violation of 18 U.S.C. § 1341. On April 2, 1993, Lively appeared before the district court for an arraignment on the information. At her arraignment, Lively waived indictment by a grand jury and entered a plea of guilty to the one count information. A Presentence Report ("PSR") was prepared and it concluded that Lively's total offense level was 10 and that Lively's

---

2. The items mainly included books and magazines. Other items obtained from these mail order companies included records, tapes, compact discs, and collectibles.

3. The probation officer noted that the vast majority of the mail order companies failed to respond to the Postal Inspection Service's inquiry, because: (1) after 1 year most of these companies

delete their records of delinquent accounts from their computer systems; and/or (2) after 1 year these companies transferred such information to collection agencies.

4. Mr. Flugga, Lively's common law husband, also submitted a handwriting sample; however, the results revealed that he was not involved in this scheme.

criminal history category was I.[5] Paragraph 54 of the PSR stated that:

> **Guideline Provisions:** Based on an offense level of 10 and a criminal history category of I, the guideline range for imprisonment is 6 to 12 months (Zone B). According to § 5C1.1(c) if the applicable guideline range is in Zone B of the Sentencing Table, the minimum term may be satisfied by: 1) A sentence of imprisonment; 2) A sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least 1 month is satisfied by imprisonment; or 3) A sentence that includes a condition or combination of conditions that substitutes intermittent confinement, community confinement, or home detention for imprisonment.

On July 9, 1993, the district court sentenced Lively to a six month term of imprisonment; three years of supervised release; ordered restitution in the of $30,963.54 to be paid by the end of her supervised release; and imposed a $50 special assessment pursuant to the statute.[6] This appeal is limited to the *kind* of sentence imposed by the district court (imprisonment) and the district court's order of restitution (both as to the amount of restitution and as to the district court's finding that defendant has the ability to pay restitution).

## II.

### A.

With respect to the district court's decision to sentence Lively to a term of imprisonment, Lively does not challenge the following: (1) a total offense level of ten; (2) a

criminal history category of I; (3) a guideline range falling within Zone B of the sentencing table; and (4) a guideline range of 6 to 12 months. As indicated above, Lively does challenge the *kind* of sentence imposed, that is, imprisonment, rather than home confinement.

Lively argues that the district court failed to consider certain congressional mandates when sentencing her. Lively relies on 18 U.S.C. § 3582(a), which provides, in part, that:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation. . . .*

18 U.S.C. § 3582(a) (West 1985) (emphasis added). Lively contends that the record is devoid of any indication that the district court either recognized or considered this congressional mandate.

■ During oral argument, the government, for the first time, raised the issue of whether this Court has jurisdiction over this portion of Lively's appeal. In support of its argument, the government cited *United States v. Wilkinson,* 9 F.3d 110 (6th Cir.1993) (Table). Under 18 U.S.C. § 3742(a), a defendant has the right to appeal (1) a sentence imposed in violation of the law, (2) a sentence imposed as a result of an incorrect application of the Guidelines, and (3) an upward departure from the Guidelines. *United States v. Smith,* 918 F.2d 664, 667 (6th Cir. 1990) (paraphrasing 18 U.S.C. § 3742(a)).[7]

---

**5.** The PSR concluded that Lively's criminal history point score was zero, notwithstanding the fact that she had two prior adult convictions.

**6.** Although the 1991 Sentencing Guidelines normally would have applied in this case, the District Court utilized the 1992 Sentencing Guidelines because they were more favorable to Lively.

**7.** Section 3742 provides in relevant part that:

> (a) **Appeal by a defendant.**—A defendant may file a notice of appeal in the district court

for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervise release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 2563(b)(6) or (b)(11) than the maximum established in the guideline range; or

Because Lively is challenging her sentence on the grounds that the district court failed to consider certain directives contained in the sentencing reform act of 1984, specifically 18 U.S.C. §§ 3553(a) & 3582(a), Lively is appealing her sentence on the grounds that it was imposed in violation of the law. Consequently, this is an appealable issue under 18 U.S.C. § 3742(a)(1). *See, e.g., United States v. Byrd*, 984 F.2d 251, 252 (8th Cir.1993) (holding that defendant's appeal based on the district court's alleged error in not considering defendant's medical condition when sentencing defendant, in violation of § 3553(a)(2)(D), was appealable under § 3742(a)(1)) (citation omitted).

■ The parties agree that the proper standard of review is whether the district court abused its discretion when it sentenced Lively to a term of imprisonment. *See United States v. Jones*, 533 F.2d 1387, 1394 (6th Cir.1976), *cert. denied*, 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977) (citation omitted). Lively argues that the district court abused its discretion in refusing to consider a sentence of probation under § 5C1.1(c)(3) of the sentencing guidelines.[8]

While this issue seems to be one of first impression in this Circuit, the First Circuit, in *United States v. Delloiacono*, 900 F.2d 481 (1st Cir.1990), had this to say in an appeal similar to the one before this Court.

> The Sentencing Guidelines evidence an elaborate strategy for accommodating the competing policy aims implicated in a typical fraud case, like the present. The Sen-

tencing Commission concluded that certain economic crimes, such as fraud, are "serious," and that serious economic crimes can be deterred significantly under a sentencing scheme that holds out "the definite prospect of prison, though the term is short...." [citing U.S.S.G. Ch. 1, Part A, § 4(d) at 7, intro. comment]. At the same time, a competing congressional mandate—requiring that the courts recognize "that imprisonment is not an appropriate means of promoting correction and rehabilitation," 18 U.S.C. § 994(j)—posed a potential impediment to deterring economic crimes. The Sentencing Commission accordingly structured the Sentencing Guidelines to require that a first offender, convicted of serious fraud, must serve at least a brief period of confinement, *leaving considerable discretion in the sentencing court, however, to determine not only its duration, intermittency and restrictiveness, but the place of confinement.*

*Delloiacono,* 900 F.2d at 484–85 (emphasis added).

The defendant in *Delloiacono* pleaded guilty to wire fraud. The district court sentenced the defendant to probation, "conditioned upon the defendant performing 1,000 hours of community service under the supervision of the probation department." *Id.* at 481. At that time, the Guidelines permitted a sentence of probation; however, such a sentence had to be conditioned upon intermittent confinement either in a prison or a jail, or in community confinement. *Id.* at 483.[9] The First Circuit held that the district

---

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. § 3742(a) (West 1985 & Supp.1993).

8. Section 5C1.1 provides, in part, that:
(a) A sentence conforms with the guidelines for imprisonment if it is within the minimum and maximum terms of the applicable range.
. . . .
(c) If the applicable guideline range is in Zone B of the Sentencing Table, the minimum term may be satisfied by—
(1) a sentence of imprisonment; or
(2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one month is satisfied by imprisonment; or

(3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e).

U.S.S.G. § 5C1.1(a) & (c) (1992).

9. The defendant in *Delloiacono* was sentenced prior to the November 1, 1989 amendments to the Sentencing Guidelines which allows the defendant to serve his or her time in home confinement in lieu of a term of imprisonment. U.S.S.G. § 5C1.1(c). In addition, when the defendant in *Delloiacono* was sentenced, § 5C1.1 was found at § 5C2.1. The 1989 amendments renumbered the relevant Sentencing Guidelines. *See* U.S.S.G.App. C., amendment 302.

court had abused its discretion in sentencing the defendant to a term of probation conditioned on 1,000 hours of community service, because the Guidelines required the defendant to be confined in some manner. *Id.* at 485.

While *Delloiacono* is not directly on point with the issue Lively raises in her appeal, the reasoning underpinning the *Delloiacono* decision nonetheless is persuasive. The Guidelines themselves take into account the congressional mandate found in § 3582(a) "that imprisonment is not an appropriate means of promoting correction and rehabilitation." Here, the district court followed the options available to it under § 5C1.1 with respect to the *kind* of sentence a defendant is to receive. Indeed, § 3553(b) states that "[t]he court *shall* impose a sentence of the *kind*, and within the range, referred to in subsection (a)(4) [which directs the district court to the appropriate sentencing guidelines]." 18 U.S.C. § 3553(b) (West Supp.1993) (emphasis added). Therefore, the district court did not abuse its discretion in sentencing a defendant to a term of imprisonment, rather than home confinement. Lively's sentence was not imposed in violation of 18 U.S.C. § 3582(a)'s mandate "that imprisonment is not an appropriate means of promoting correction and rehabilitation."

### B.

Lively also argues that the district court abused its discretion because the district court failed to state the precise reasons why it sentenced Lively to a term of imprisonment. The law in this Circuit is well settled that the district court, in this case, was not required to state its reasons on the record. 18 U.S.C. § 3553 provides, in part, that:

(b) **Application of guidelines in imposing a sentence.**—The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines

that should result in a sentence different from that described. . . .

(c) **Statement of reasons for imposing a sentence.**—The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—

(1) is of the kind, and within the range, described in subsection (a)(4), and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range. . . .

18 U.S.C. § 3353(b)-(c)(1) (West Supp.1993).

In *United States v. Duque*, 883 F.2d 43 (6th Cir.1989), this Court held "that if the judge sentences within the appropriate guideline, and the range of the guideline does not exceed 24 months, the trial judge is not required to state reasons for selecting a sentence within the guideline range." *Id.* at 44. The *Duque* Court stated that:

[T]he trial court made a factual determination that the Appellant was not an organizer, and such a finding necessarily implies that he found Duque's role to be minor. No further reasons need be given for justifying the sentence. *The sentencing judge is not required under the circumstances here to state with particularity reasons for setting a sentence that falls within the guidelines. He resolved the factual dispute in favor of the defendant, and then imposed a sentence within a guideline where the range was less than 24 months.*

*Id.* at 45 (emphasis added).

Here, the district court sentenced Lively within the guideline range both with respect to the kind of sentence (imprisonment) and to the length of the sentence (a guideline range of 6–12 months with a 6 month sentence imposed on Lively). Because the range was less than 24 months, the district court need not "state with particularity reasons for setting a sentence that falls with the guidelines." *Duque*, 883 F.2d at 44.

Moreover, the district court's judgment expressly adopted the reasons set forth in the PSR. Therefore, even if this was a case where the district court was required to state with particularity the reasons for imposing a

term of incarceration, the district court complied with this requirement.

### C.

■ Finally, Lively argues that when the facts in this case are analyzed pursuant to 18 U.S.C. § 3553(a), it is clear that the district court abused its discretion in sentencing her to a term of imprisonment, rather than to a sentence of home confinement. With respect to this part of Lively's appeal, we hold that the issue is not appealable, and thus we have no jurisdiction over this part of the appeal.

As set forth above, a defendant may only appeal (1) a sentence imposed in violation of the law, (2) a sentence imposed as a result of an incorrect application of the Guidelines, and (3) an upward departure from the Guidelines. *United States v. Smith*, 918 F.2d 664, 667 (6th Cir.1990) (paraphrasing 18 U.S.C. § 3742(a)). This Court has, held that "we have no jurisdiction over appeals which argue that the district court failed to properly weigh certain factors in departing downward." *United States v. Gregory*, 932 F.2d 1167, 1169 (6th Cir.1991). Similarly, we have no jurisdiction over appeals that argue only that the district court abused its discretion in

imposing an otherwise valid sentence within the applicable Guideline range.

■ Even if the issue were appealable, Lively's contentions are wholly without merit.· Section·3553(a) provides a number of different factors that the district court shall utilize in imposing a sentence in any given case.[10] On appeal, Lively fails to address six of these ·factors. In addition, the factors which Lively selectively discusses, provide no basis for the conclusion that the district court abused.its discretion in this case.

·"[F]indings of fact that underlie the district court's sentence are reviewed under a clearly erroneous standard." *Duque*, 883 F.2d at 44–45. Lively's first argument is that she committed a non-violent crime and, in her opinion, an unsophisticated crime. The facts compel a different conclusion. Lively defrauded approximately 450 mail order companies, over a span of 15 months. In addition, she employed approximately 50 different fictitious names during the course this scheme. Lively also argues that she received little economic benefit from her illegal actions. This factor is irrelevant to the issue before this Court.

---

10. Section 3553(a) states that:

**(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply to the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are in effect on the date the defendant is sentenced;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

**(b) Application of guidelines in imposing a sentence.**—The court· shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission....

18 U.S.C. § 3553(a)-(b) (West 1985 & Supp. 1993).

Lively next contends that based on her mental impairments and physical infirmities that a term of imprisonment cannot be imposed. In support of this argument, Lively relies on *United States v. Slater*, 971 F.2d 626 (10th Cir.1992). Lively's reliance on *Slater* is misplaced, because *Slater* involved the issue of whether the district court erred in denying the defendant's motion for home confinement under § 5H1.4.[11] Here, Lively did not make a motion under § 5H1.4.

■ The final argument raised by Lively is based on Note 7, following § 5C1.1 of the Guidelines. The text of Note 7 states that: "The use of substitutes for imprisonment as provided in subsections (c) and (d) is not recommended for most defendants with a criminal history category of III or above. Generally, such defendants have failed to reform despite the use of such alternatives." U.S.S.G. § 5C1.1, Application Note 7 (1992). Lively takes this to mean that imprisonment is not favored when the criminal history category is less than III. If such were the case, § 5C1.1(c) itself would be drafted differently, and the district court would not be given such wide discretion in imposing a term of imprisonment on such defendants. Thus, Lively's argument is unavailing.

Therefore, the district court's decision to sentence Lively to a term of imprisonment is AFFIRMED.

### III.

■ As noted above, the district court ordered Lively to pay restitution in the amount of $30,963.54. This amount represents the retail value of the goods which Lively fraudulently obtained. Lively argues on appeal that the proper amount of restitution must be calculated based on the manufactured costs, or the wholesale value, of the items fraudulently obtained.

The law in this Circuit provides that once the district court has considered the required factors under the Victim and Witness Protection Act, 18 U.S.C. §§ 3663–3664 (originally codified at §§ 3579–3580) (West 1985 & Supp.1993),[12] "the court has very broad discretion in setting the terms of the restitution order." *United States v. Purther*, 823 F.2d 965, 969 (6th Cir.1987). "This Court reviews the district court's order of restitution for abuse of discretion, but reviews the district court's application of a statute de novo." *United States v. Blanchard*, 9 F.3d 22, 24 (6th Cir.1993).

Lively relies on 18 U.S.C. § 3664(a) in support of her argument that the out-of-pocket costs of the goods should be employed to calculate the amount of restitution in this case, rather than the retail value of such goods. 18 U.S.C. § 3664(a) provides that:

> The court, in determining whether to order restitution under section 3663 of this title and the amount of such restitution, *shall consider the amount of the loss sustained by any victim as a result of the offense,* the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3664(a) (West Supp.1993) (emphasis added).

Lively reliance on § 3664(a) is misplaced. In *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), the United States Supreme Court held that § 3663 was the proper statute to examine in determining the amount of restitution. *Id.* at 417–18, 110 S.Ct. at 1983.[13] 18 U.S.C. § 3663 provides in relevant part that:

---

11. Section 5H1.4 states, in part, that: "Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; *e.g.,* in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."

12. U.S.S.G. § 5E1.1 provides that "[t]he court shall ... enter a restitution order if such order is authorized under 18 U.S.C. §§ 3663–3664." U.S.S.G. § 5E1.1(a)(1) (1992).

13. The *Hughey* Court addressed this issue when § 3663 was codified at 18 U.S.C. § 3579 and § 3364 was codified at 18 U.S.C. § 3580. *See Hughey*, 495 U.S. at 413 n. 1, 110 S.Ct. at 1981 n. 1. This minor distinction does not alter, however, the clear command of the *Hughey* decision.

(a)(1) The court, when sentencing a defendant convicted of an offense under this title [title 18] ... may order ... that the defendant make restitution to any victim of such offense.

. . . .

(b) The order may require that such defendant—

(1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense—

(A) return the property to the owner of the property or someone designated by the owner; or

(B) *if return of the property under subparagraph (A) is impossible,* impractical, or inadequate, *pay an amount equal to the greater of—*

(i) *the value of the property on the date of the damage, loss, or destruction,* or

(ii) *the value of the property on the date of sentencing,*

less the value (as of the date the property is returned) of any part of the property that is returned.

18 U.S.C. § 3663(a) & (b) (West 1985 & Supp.1993) (emphasis added).

There is no dispute that Lively could no longer return the property, inasmuch as she had sold the property at various flea markets. Moreover, both parties agree that § 3663 does not define the term "value." The government, without any analysis, states that the value of the property was that reflected in the PSR. The district court stated:

Defendant objects to the amount of restitution determined by the probation officer. Defendant asserts that the victims should receive compensation for out-of-pocket loss as opposed to retail value. The court agrees with the reasoning of the probation officer set forth in the addendum and finds that the appropriate figure to use for restitution is the retail value. The court further notes that retail value is the appropriate measure in this case because defendant sold the items she ordered from the victims in the retail market and received retail value for those items.

The addendum to the PSR concluded that: The victim manufacturers have a right to make a profit from the sales of their merchandise. Additionally, it would almost be impossible to determine the wholesale amount for each item received from the 45 victim manufacturers. The definition of "loss" is defined in Application Note No. 2 of § 2B1.1. This Application Note states that "loss" means the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. In this case, the fair market value of the items is $30,963.54.

This Circuit has not addressed this precise issue.[14] In addition, it appears that only the Ninth Circuit has addressed a similar issue.[15] In *United States v. Angelica,* 951 F.2d 1007 (9th Cir.1991), the defendant created a corporation which advertised to retail consumers who already owned diamonds to send in their loose diamonds, which the corporation then would resell and distribute a certain portion of the proceeds. Although the corporation

---

**14.** In *United States v. Anglian,* 784 F.2d 765 (6th Cir.), *cert. denied,* 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986), the defendant challenged a district court's order of restitution by arguing that the amount of the restitution had to be based on the amount of benefit which the defendant derived from committing the crime. *Id.* at 767. In rejecting this argument, the Sixth Circuit stated, in dictum, "that the purpose of restitution [under the Victim and Witness Protection Act] is to make the victim whole." *Id.* (citations to the Victim and Witness Protection Act omitted). Thus, *Anglian* did not address the precise issue before this Court.

**15.** Lively cites *United States v. Watson,* 966 F.2d 161 (5th Cir.1992), for the proposition that a district court's use of the retail value of stolen goods for purposes of computing base offense level is proper, but a district court must use the lower manufactured cost of goods for purpose of computing restitution. Lively overstates the holding in *Watson.* Although the court in *Watson* did hold that it was proper to use the retail price to calculate the base offense level under § 2B1.1(b)(1), the issue of whether the district court properly calculated the amount of restitution (which was based on the wholesale value of the property) was not before the Fifth Circuit. *Id.* at 162–63.

sold these diamonds, the corporation failed to distribute any of the proceeds. *Id.* at 1008. The district court ordered restitution in an amount equal to the retail value of the diamonds and the defendant appealed. Both parties agreed on appeal "that the victim's position in the market is relevant in valuing converted property." *Id.* at 1010 (citing *Hughey*, 495 U.S. at 416, 110 S.Ct. at 1982). The parties did not agree, however, as to whether the victims were "investors," or were consumers. The Ninth Circuit held that the victims were more like consumers, and thus the retail price of the diamonds was the proper basis from which to establish the amount of restitution. *Id.*

In addition, the Supreme Court in *Hughey, supra,* stated that "the ordinary meaning of 'restitution' is restoring someone to a position he occupied before a particular event...." 495 U.S. at 416, 110 S.Ct. at 1982 (citing Webster's Third New International Dictionary 1936 (1986); Black's Law Dictionary 1180 (5th ed. 1979)). Furthermore, the legislative history behind the Victim and Witness Protection Act of 1982, reveals the following:

> The principle of restitution is an integral part of virtually every formal system of criminal justice, of every culture and every time. It holds that, whatever else the sanctioning power of society does to punish the wrongdoers, *it should also insure that the wrongdoer is required to the degree possible to restore the victim to his or her prior state of well-being.*
>
> ....
>
> In contrast, new methods at constructive, victim-oriented sentencing practices [like the Victim and Witness Protection Act] can insure, for example, that the prosecutorial, judicial and probation authorities know, *and are encouraged to respond to, the victim's monetary damages.*

S.Rep. No. 97–532, 97th Cong., 2d Sess. at 30–31, *reprinted in* 1982 U.S.C.C.A.N. 2515, 2536–37 (emphasis added).

Section 3663(e) provides, in part, that:

> (2) Any amount paid to a victim under an order of restitution shall be set off against any amount later recovered as compensatory damages by such victim in—

> (A) any Federal civil proceeding; and

> (B) any State civil proceeding, to the extent provided by the law of that State.

18 U.S.C. § 3663(e)(2) (West 1985). The purpose of subsection (e) was to clarify:

> the relationship between restitution and civil proceedings brought by the victim against the defendant.... Subsection ... (2) provides that any amount paid to a person pursuant to an order of restitution shall be set off against an amount later recovered as compensatory damages in a civil proceeding. *The purpose of these provisions is to assure that the victim does not receive double damages.*

S.Rep. No. 97–532, 97th Cong., 2d Sess. at 32, *reprinted in* 1982 U.S.C.C.A.N. at 2538 (emphasis added).

Furthermore, § 3663 specifically provides "for an offense resulting in bodily injury to a victim ... [restitution may be ordered to] reimburse the victim for *income* lost by such victim as a result of such offense." 18 U.S.C. § 3663(b)(2)(C) (West 1985) (emphasis added). Thus, Congress expressly allowed for loss of income to be included where the victim suffers bodily injury; no such express provision is contained in the statute for loss of property.

It is, however, significant that neither the Victim and Witness Protection Act nor its legislative history expressly foreclose the district court from ordering restitution in the amount that would cover a company's actual losses, which would be the retail price in the case at bar. Indeed, the purpose of § 3663(e) is to prevent double recovery and not to prevent recovery of actual losses.

Moreover, in order to restore the mail order companies to their prior state of well being the order of restitution had to include their lost profits. Before Lively victimized these companies, they had merchandise that could be sold at the retail price level. After Lively victimized these companies, they no longer had this merchandise to sell at the retail price level. Lively precluded these companies from being able to realize the profits of their labor. Thus, including lost profits in the order of restitution was the

only way to assure the restoration of these victims to their prior state of well being.

This holding also is consistent with the law of this Circuit with respect to the amount of restitution prior to the enactment of the Victim and Witness Protection Act. *See United States v. Shackelford*, 777 F.2d 1141, 1146 (6th Cir.1985) ("restitution is ... permissible as long as it does not exceed the amount of the victim's actual losses.") (citation omitted) (decided under 18 U.S.C. § 3651 (West 1982 ed.), *repealed by*, Pub.L. 98–473, Title II, §§ 212(a)(1), (2), 235(a)(1), Oct. 12, 1984, 98 Stat.1987, 2031, as amended)). Although *Shackelford* was decided under 18 U.S.C. § 3651, and the instant appeal addresses a restitution order under the Victim and Witness Protection Act, there is nothing in either the Victim and Witness Protection Act, or its legislative history, which indicates that the Act was intended to limit restitution to less than the actual loss where the victim suffers a property loss.

Additionally, requiring the government to establish the victims' out-of-pocket expenses incurred with respect to the merchandise which Lively fraudulently obtained would be a significant, time-consuming task. At a minimum, in order to calculate such an amount, the following items would have to examined: the cost of the goods; the expense incurred in storing the goods in a warehouse and retrieving the goods to be shipped when they are ordered; and the cost of sending the goods. Furthermore, if defendants filed objections to the various figures used to determine the proper amount of restitution, the sentencing would turn into a mini-trial, consuming the district court's precious and limited resources.

■ Therefore, under the Victim and Witness Protection Act, a district court properly may order restitution to include the victim's actual losses. Thus, the district court's order of restitution in the instant case, which includes actual losses based on the retail price for the merchandise, was permissible under the Victim and Witness Protection Act.[16]

■ Lively also argues that the district court abused its discretion when it concluded that Lively had the ability to pay restitution in the amount of $30,963.54. As set forth above, "[t]his Court reviews the district court's order of restitution for abuse of discretion...." *Blanchard*, 9 F.3d at 24. The district court concluded that:

> The fact that a defendant is currently unable to afford full restitution does not preclude such an order. The court concludes that defendant is capable of gainful employment as a seller at various flea markets, where she developed expertise. Defendant would appear to be capable of employment in a retail establishment, or even of running her own business.

18 U.S.C. § 3664 provides that

> (a) The court, in determining whether to order restitution under section 3663 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, *the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents*, and such other factors as the court deems appropriate.

18 U.S.C. § 3664(a) (West Supp.1993) (emphasis added). Lively contends that the district court's finding that she had the ability to be gainfully employed is clearly erroneous, and thus the district court abused its discretion in ordering restitution under § 3664(a).

The law is well-settled in this Circuit that being indigent "is not a bar to an order of restitution." *United States v. Mounts*, 793 F.2d 125, 128–29 (6th Cir.), *cert. denied*, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724

---

**16.** Lively also relies on the distinction between restitution and compensatory damages which is recognized in the law of civil damages. As explained in a leading treatise:

> The remedy of restitution differs from the remedy in damages in that in awarding damages the purpose is to put the injured party in as good a position as he would have occupied, had the contract been fully performed, while in

enforcing restitution, the purpose is to require the wrongdoer to restore what he has received and thus tend to put the injured party in as good a position as that occupied by him before the contract was made.

5 Corbin on Contracts 573, § 1107 (1964). Because this appeal involves a restitution ordered under the Victim and Witness Protection Act, reliance on civil law is misplaced.

(1986). *See also United States v. Joseph,* 914 F.2d 780, 785 (6th Cir.1990). In determining whether to order restitution under the Victim and Witness Protection Act, the district court must consider "the financial resources and earning ability of the defendant." *Joseph,* 914 F.2d at 785–86 (citing *United States v. Purther,* 823 F.2d 965, 969 (6th Cir.1987)).

Lively has cited various factors in support her argument that the district court's finding that she was capable of gainful employment was an abuse of discretion, and thus she does not have the ability to pay this order of restitution. Upon a review of the record before us, the district court's order of restitution is vacated. Based on the facts underpinning this part of Lively's appeal, the issue of whether Lively has to ability to pay such a restitution order is remanded to the district court for further findings.

We therefore **AFFIRM** the District Court's sentence in this matter. We also **AFFIRM** the District Court's holding that the retail value of the merchandise fraudulently obtained by Lively is the proper amount to base an order of restitution. We **VACATE,** however, the order of restitution, and **REMAND** this cause to the District Court for a further determination on the issue of Lively's ability to pay.