Finding no abuse of discretion, we AFFIRM the denial of A & K's Rule 60(b) motion.

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Juan WINSTON (93–5936) and Bobby Lloyd (93–5937), Defendants–Appellants.**

**Nos. 93–5936, 93–5937.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 8, 1994.

Decided Oct. 5, 1994.

---

Joseph C. Murphy, Jr., Asst. U.S. Atty. (argued and briefed), Memphis, TN, for the U.S.

Kemper B. Durand (argued and briefed), Thomason, Hendrix, Harvey, Johnson & Mitchell, Memphis, TN, for Juan Winston.

Timothy R. Holton (briefed), Crow & Holton, Memphis, TN, for Bobby Lloyd.

Bobby Lloyd, pro se.

Before: JONES and BATCHELDER, Circuit Judges; and JOINER, District Judge.*

NATHANIEL R. JONES, J., delivered the opinion of the court, in which JOINER, D.J., joined. BATCHELDER, J. (pp. 242–43), delivered a separate concurring opinion.

NATHANIEL R. JONES, Circuit Judge.

Defendants–Appellants Juan Winston and Bobby Lloyd appeal their convictions and sentences for conspiracy to possess cocaine base with intent to distribute, in violation of 21 U.S.C. § 846,[1] and aiding and abetting the possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1)[2] and 18 U.S.C. § 2.[3] We find that Lloyd's challenges to the sufficiency of the evidence against him, to various rulings by the lower court during the trial, and to his sentence, are meritless. Accordingly, we affirm Lloyd's conviction and sentence. Winston's challenge to the sufficiency of the evidence against him is also meritless. We find, however, that the lower court erred in calculating the sentence imposed upon Winston.

Consequently, we vacate Winston's sentence and remand for resentencing.

## I.

On August 6, 1992, a confidential informant told officers of the Shelby County Sheriff's Department about a pending drug deal that was to take place in the Piggly Wiggly parking lot on Watkins Street in Memphis, Tennessee. The officers equipped the informant with a radio transmitter, and staked out the parking lot. Shortly thereafter, the informant met with Louis Scott at the Watkins St. lot. Scott told the informant that the drugs would arrive in about five minutes in either a gold or silver Cadillac.

Five minutes later, a gold Cadillac with license number XLM–658, drove onto the lot. As Scott approached it, it slowed down but then drove off without stopping. Next, a silver Cadillac drove onto the lot and stopped. The second Cadillac was driven by Leslie T. Hill, and Defendant Bobby Lloyd was a passenger. Lloyd got out and placed three plastic bags in a shopping cart. Scott walked to the cart, picked up the bags, returned to the informant, and said: "Here the dope is—where is the money?" At this point, the police arrested Scott, Hill, and Lloyd. The plastic bags contained 23.4 grams of crack cocaine.[4]

Upon his arrest, Lloyd told the officers that the cocaine came from Defendant Juan Winston's house at 1098 Decatur Street in Memphis, that Winston had another four to six ounces of crack at home, and that Winston drove a gold Cadillac. The police obtained a warrant and searched the house on Decatur Street, which was actually owned by Winston's mother. They found 37 more grams of crack cocaine in the house. Meanwhile, a detective found Winston driving the gold Cadillac with license number XLM–658, and arrested him. Upon his arrest, Winston admitted that the drugs found in his mother's house were his, and that he had earlier driv-

---

* The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. 21 U.S.C. § 846 (1988).

2. 21 U.S.C. § 841(a)(1) (1988).

3. 18 U.S.C. § 2 (1988).

4. For a more detailed statement of the facts, see *United States v. Hill*, 827 F.Supp. 1354, 1355 (W.D. Tenn.1993).

en to the Piggly Wiggly parking lot carrying crack cocaine.

In September 1992, Scott, Hill, Lloyd, and Winston were indicted. Scott pled guilty. The case against Hill, Lloyd, and Winston went to trial. In January 1993, the government filed an Information giving Winston notice, as required by 21 U.S.C. § 851(a)(1),[5] that it would seek an enhanced sentence based on Winston's two prior felony drug convictions.[6]

Before trial, the court ruled that Lloyd's statements upon arrest about Winston and his Decatur Street residence were inadmissible hearsay at his and Winston's joint trial, in accordance with *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Subsequently, at trial, while being cross-examined by Lloyd's counsel, Police Officer Galloway referred to Lloyd's taking him to "a residence on Decatur," and telling him about "the stuff inside the residence." J.A. at 122. Winston and Lloyd each objected and moved for a mistrial. The court denied the motions. Lloyd's counsel then sought to cross-examine Galloway about Lloyd's statement, but the court denied her request.

Winston's fifteen-year-old nephew testified at trial that the drugs found at 1098 Decatur Street were his and not Winston's. Apparently, the jury did not believe the nephew, as it returned guilty verdicts against Hill, Lloyd, and Winston.

Subsequently, the court sentenced Lloyd to 292 months imprisonment, followed by a five-year term of supervised release. This sentence included a six-level enhancement to Lloyd's base offense level due to the court's finding that Lloyd was a career offender within the meaning of USSG § 4B1.1.[7]

Stating that "I see that I have no discretion in the matter," J.A. at 324, the court sentenced Winston to a mandatory term of life imprisonment without release pursuant to 21 U.S.C. § 841(b)(1)(A).[8]

---

**5.**   21 U.S.C. § 851(a)(1) (1988).

**6.**   One of these prior convictions was for selling .3 grams, and the other was for possessing 1.9 grams, of crack cocaine.

Hill, Lloyd, and Winston each appealed. Hill, however, died in March 1994, whereupon his conviction was vacated and his appeal dismissed.

## II.

Both Defendants claim that the evidence against them was insufficient to support their convictions. "We have held that on appeal from a criminal conviction we must only determine 'whether the relevant evidence viewed in the light most favorable to the government could be accepted by a reasonably-minded jury as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt.' " *United States v. Seltzer,* 794 F.2d 1114, 1119 (6th Cir.1986) (quoting *United States v. Meyers,* 646 F.2d 1142, 1143 (6th Cir.1981)), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 979 (1987). In reviewing claims for sufficiency of evidence to support a conviction, this court, while reviewing the record in the light most favorable to the prosecution, should grant relief only "if it is found that upon the record evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979).

■ Without offering any argument, Lloyd asserts that the evidence against him was insufficient. This submission is without merit. Police eyewitnesses testified that they saw Lloyd leave the car driven by Hill with the plastic bags later found to contain crack cocaine.

■ Winston points out that the police eyewitnesses could not identify him as the driver of the gold Cadillac at the Piggly Wiggly parking lot, and that even if he was there at that time, there is no evidence that he participated in the drug sale. Further, although Winston stated upon his arrest that he brought drugs to the Piggly Wiggly parking lot while driving the gold Cadillac, he

---

**7.**   United States Sentencing Commission, *Guidelines Manual,* § 4B1.1 (Nov.1993).

**8.**   21 U.S.C. § 841(b)(1)(A) (Supp. V 1993).

argues that this statement does not imply that he had anything to do with the activities of Lloyd, Scott, or Hill. Therefore, he concludes, the evidence was insufficient to support the count of conspiracy against him.

However, the record evidence includes the recorded statement made by Scott to the informant that Scott expected the drugs to come in about five minutes from either a gold or silver Cadillac, and eyewitness testimony that Winston's gold Cadillac pulled into the parking lot five minutes later. Taken together with Winston's testimony that he did bring drugs in this vehicle to the Piggly Wiggly parking lot, and viewing the evidence in the light most favorable to the prosecution, it was not irrational for the jury to conclude that Winston played a role in the conspiracy.

Winston also mentions that his nephew denied that the crack cocaine uncovered at his residence belonged to Winston. However, upon his arrest Winston stated that the crack was his. It was not irrational for the jury to believe this statement and reject the nephew's testimony.

### III.

■ Both Defendants moved for mistrial when, during cross-examination, Officer Galloway referred to "the residence on Decatur." However, only Lloyd raises the denial of his motion as an issue on appeal. "We review the denial of a motion for mistrial for an abuse of discretion." *United States v. Chambers*, 944 F.2d 1253, 1263 (6th Cir. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 1217, 117 L.Ed.2d 455 (1992). *See also United States v. Atisha*, 804 F.2d 920, 926 (6th Cir.1986) (stating that appellate court must decide when trial court has abused its discretion by failing to grant mistrial), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. *In re Bendectin Litig.*, 857 F.2d 290, 307 (6th Cir.1988), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989); *Schrand v. Federal Pac. Elec. Co.*, 851 F.2d 152, 156–57 (6th Cir.1988).

We find that Galloway's references to Decatur Street were only prejudicial to Winston, and not to Lloyd. Lloyd's statements about Winston having drugs at 1098 Decatur would have been admissible against Lloyd had Lloyd not been jointly tried with Winston. *See* Fed.R.Evid. 801(d)(2). These statements were only inadmissible hearsay as against Winston. *See Bruton*, 391 U.S. at 137, 88 S.Ct. at 1628–29. Furthermore, it was Lloyd's counsel whose questions elicited Galloway's reference to the house on Decatur. Thus, even if the question of whether the court should have granted *Winston's* motion for mistrial is a close question, the court clearly did not abuse its discretion in denying *Lloyd's* motion for mistrial.

### IV.

■ After the court denied Lloyd's motion for mistrial, Lloyd requested permission to cross-examine Galloway about the statements Lloyd had made upon his arrest. The court denied the request under Rule 403 of the Federal Rules of Evidence.

Rule 403 provides that evidence may be excluded, even though relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." "It is well settled that a trial judge's discretion in balancing the probative value of evidence against its potential for unfair prejudice is very broad." *United States v. Dabish*, 708 F.2d 240, 243 (6th Cir.1983).

Lloyd contends, without offering any argument, that this denial was reversible error. We disagree. Because the lower court acted in accordance with *Bruton*, it did not abuse its discretion in denying Lloyd's request to cross-examine Galloway about the statements made by Lloyd at Lloyd's arrest.

### V.

■ Lloyd asserts on appeal that the court's application of USSG § 4B1.1 to enhance his sentence was "improper." He does not state, however, why or how it is improper. The government contends that we have no jurisdiction to review Lloyd's generalized claim, but it cites no authority for so limiting our jurisdiction. We believe that the mere declaration that the sentence was improper is

enough to pass the minimal threshold of jurisdiction.

◼ Nevertheless, we find that the lower court's application of USSG § 4B1.1 was entirely proper. A court's factual findings in relation to the application of the Sentencing Guidelines are reviewed under a deferential "clearly erroneous" standard. *See* 18 U.S.C. § 3742 (1988); *United States v. Garner,* 940 F.2d 172, 174 (6th Cir.1991). Legal conclusions regarding the Guidelines, however, are reviewed *de novo. Garner,* 940 F.2d at 174. A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

USSG § 4B1.1 provides the following:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

The table provides that, where the offense statutory maximum is more than 25 years but less than life, the offense level is 34.

Lloyd's presentence report reveals that he was 36 years old at the time of offense, and that he had at least two prior felony convictions for crimes of violence. J.A. at 47, 52–56. The court declined to hold Lloyd responsible for the cocaine found in Winston's residence, and held him responsible only for the 23 grams of cocaine found at the Piggly Wiggly parking lot. The statutory maximum

sentence for possessing or conspiring to possess this amount of crack cocaine with intent to distribute is forty years. 21 U.S.C. §§ 841(b)(1)(B)(iii), 846 (1988). Because no evidence indicates that these facts are erroneous, they clearly support the trial court's application of USSG § 4B1.1. Thus, the court properly calculated Lloyd's sentence based upon an adjusted offense level of 34.

## VI.

Winston was sentenced to a mandatory term of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A), which provides in pertinent part:

In the case of a violation of subsection (a) of this section involving ... 50 grams or more of a mixture or substance ... which contains cocaine base ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life. . . . If any person commits a violation of this subparagraph ... after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release. . . . [9]

◼ It is obvious from the statute's face—from its use of the phrase "*a* violation"—that this section refers to a *single* violation. Thus, where a defendant violates subsection (a) more than once, possessing less than 50 grams of cocaine base on each separate occasion, subsection (b) does not apply, for there is no *single* violation involving "50 grams or more" of cocaine base. This is true even if the sum total of the cocaine base involved all together, over the multiple violations, amounts to more than 50 grams.

This straightforward understanding of the statute is not only in keeping with our duty to "construe narrowly the applicability of any criminal statute," *D & W Food Centers, Inc. v. Block,* 786 F.2d 751, 758 (6th Cir.1986) (citing *United States v. Bass,* 404 U.S. 336, 346–48, 92 S.Ct. 515, 522–23, 30 L.Ed.2d 488 (1971)), but it is also in keeping with Congress' expressed purpose in enacting 21

---

9. Subsection (a) provides, in pertinent part, that "it shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. . . ."

U.S.C. § 841(b), which was to target major drug traffickers and manufacturers, kingpins, and masterminds of criminal organizations. *See* H.R.Rep. No. 99–845, 99th Cong., 2d Sess. 11–12 (1986) (House Judiciary Committee Report, hereinafter *"Report"*); 132 Cong. Rec. 14301, 14288–89 (daily ed. Sept. 30, 1986) (statements of Senators Byrd, Chiles, and Biden). The House Judiciary Committee explained that "the Committee selected quantities of drugs which if possessed by an individual would likely be indicative of operating at such a high level." *Report, supra,* at 12. *See generally United States v. Martinez–Zayas,* 857 F.2d 122, 130 (3d Cir. 1988) ("Congress designated drug quantity as the best means of identifying those individuals who should be subject to a 'heightened sentence.' ") (citing *Report, supra,* at 11). If we were to construe 21 U.S.C. § 841(b)(1)(A) as applying to aggregate amounts of drugs held on various separate occasions, it could be used against small-time dealers or users who never possess more than a few grams at a time. The phrase, *"a violation,"* makes it clear that this was not Congress's intent.[10]

■ Winston was indicted on three charges: (1) conspiring to possess more than 50 grams of cocaine base, (2) possessing 23 grams of cocaine base, and (3) possessing 37 grams of cocaine base. Only the first charge involves "50 grams or more of a mixture or substance ... which contains cocaine base." Thus, because the latter charges cannot be aggregated together for the purpose of applying 21 U.S.C. § 841(b)(1)(A), only this

first charge can trigger the imposition of a life sentence pursuant to this section.

When sentencing Hill and Lloyd, the lower court expressly found, by a preponderance of the evidence, that the conspiracy, which was the subject of the first charge of the indictment, involved only the 23 grams of cocaine base carried by Lloyd in the Piggly Wiggly parking lot. There was no evidence linking the conspiracy to the 37 grams found at Winston's house. J.A. at 290–91. The government conceded at oral argument that there was no evidence that the defendants had sold drugs together before, and that there was "a problem" with the sufficiency of the evidence in support of the claim that the count one conspiracy involved more than 50 grams of cocaine. It follows that, despite the language in the indictment describing an amount of cocaine base "in excess of 50 grams," J.A. at 13, the amount of drugs that the court determined to be involved in the conspiracy was insufficient to justify the imposition of an enhanced sentence pursuant to 21 U.S.C. § 841(b)(1)(A).[11] Thus the lower court erred in sentencing Winston under this statute.

Although Winston does not raise this error as an issue on appeal, in the interest of justice we raise it *sua sponte. See, e.g., United States v. Merklinger,* 16 F.3d 670, 676 (6th Cir.1994). We therefore vacate Winston's sentence of life imprisonment, and remand the matter for resentencing.

## VII.

In light of our conclusion that 21 U.S.C. § 841(b)(1)(A) is not applicable to Winston in

---

**10.** In this way, § 841(b)(1)(A) is quite unlike the sentencing guidelines. When applying the guidelines to a defendant convicted of participation in multiple drug violations or in a drug conspiracy, courts are required to aggregate the amounts of drugs for which the defendant and his or her co-conspirators were responsible. *See* USSG § 2D1.1, comment. (nn.6, 12). Section 841(b)(1)(A), on the other hand, requires a sentencing court to consider separate violations of § 841(a) without aggregating the amount of drugs involved. *Accord United States v. Mergerson,* 4 F.3d 337, 346 (5th Cir.1993) (holding that, when applying guidelines, it is proper for sentencing court to use amounts of drugs discussed in negotiations in order to calculate base offense level, whereas when applying § 841(b)(1)(A), "[m]ere proof of the amounts 'negotiated' ...

would not count toward quantity of heroin applicable to the conspiracy count.").

**11.** Although the jury found Winston guilty of the conspiracy charge, the quantity of drugs involved is not an element of a § 841(a) offense, *United States v. Sharp,* 12 F.3d 605, 607 (6th Cir.1993), and the jury was not instructed that it had to find a certain quantity. This lack of instruction was proper, for the quantity of drugs involved in a § 841(a) offense is pertinent only to sentencing, and the sentencing court alone is responsible for resolving all factual issues pertaining to the calculation of a defendant's sentence. *See United States v. Moreno,* 899 F.2d 465, 473 (6th Cir. 1990).

the present case, we decline at this time to address Winston's challenge to the constitutionality of 21 U.S.C. §§ 841(b)(1)(A) and 851(a)(1).[12]

## VIII.

For the foregoing reasons, we affirm Lloyd's conviction and sentence, as well as Winston's conviction. However, we vacate Winston's sentence and remand for resentencing in accordance with this opinion.

BATCHELDER, Circuit Judge, concurring.

I concur in each aspect of this opinion except the majority's conclusion that "the mere declaration that [Lloyd's] sentence was improper is enough to pass the minimal threshold of jurisdiction." I do not believe that this is a correct statement of the law in general, and in this case in particular, I would hold that we lack jurisdiction to review appellant Lloyd's sentence.

The right of a defendant to appeal a guidelines sentence is set out in 18 U.S.C.A. § 3742(a) (West 1985 & Supp.1994). It is well-settled in this circuit that our jurisdiction under that statute to review a guidelines sentence is limited to claims that the sentence (1) was imposed in violation of the law, (2) was imposed as a result of an incorrect application of the guidelines, (3) is outside the applicable guideline range and is unreasonable in light of statutory factors, or (4) is plainly unreasonable and was imposed for an offense for which there is no sentencing guideline. *United States v. Lavoie,* 19 F.3d 1102, 1103 (6th Cir.1994).

I would concede that we have jurisdiction to review a sentence labeled "improper" where the defendant provides some substance to that claim which arguably fits within one of the foregoing categories. In *United States v. Lively,* 20 F.3d 193 (6th Cir. 1994), for example, we considered whether the defendant's challenge to the *kind* of sentence imposed was reviewable on appeal.

We found that, because the defendant argued that the district court, in imposing a sentence of imprisonment rather than home confinement, had failed to consider certain directives contained in the Sentencing Reform Act of 1984, she was in fact arguing that her sentence was imposed in violation of law. Accordingly, we found the sentence reviewable. *Id.* at 196–97. But the majority's holding here that "the mere declaration that the sentence was improper is enough to pass the minimum threshold of jurisdiction" simply negates the requirements of § 3742(a).

Here, the sum total of Lloyd's attack on his sentence is this:

**4– Was your Appellant's sentence proper under the sentencing guidelines?**

Your Appellant was sentenced to a period of incarceration of 292 months based upon the following guideline sentence calculation:

| | |
|---|---|
| Base offense level | 28 |
| Criminal History Category | VI |
| Career Offender adjustment | 34 |

Your Appellant Bobby Lloyd would urge that the sentence as calculated is not proper.

More specifically, Appellant contends that the increase in his offense level from 28 to 34 based upon the Career Offender provisions of the Sentencing Guidelines, was improper and thus his sentence should not have been calculated based upon an offense level of 34 but rather 28.

Brief of Appellant Lloyd, pp. 8–9.

Lloyd has provided no substance whatsoever from which we can determine the basis for our jurisdiction to review his sentence. He does not claim that the district court's use of the career offender provision was based on erroneous findings of fact. He does not point to any specific legal error in the district court's use of the career offender provision. Without such a claim of factual or legal error, there is no basis for this court to conclude that Lloyd in fact claims that the

---

**12.** Additionally, Winston preserves for possible appeal his contention that the sentencing guidelines' disparate treatment between cocaine powder and crack constitutes unconstitutional discrimination against African Americans. This is-

sue is not addressed in the text of this opinion because both parties acknowledge that the Sixth Circuit has recently rejected this theory in *United States v. Reece,* 994 F.2d 277 (6th Cir.1993).

sentence was imposed in violation of the law or as a result of an incorrect application of the guidelines. Similarly, there is no basis for concluding that Lloyd in fact claims that the sentence is outside the applicable guideline range or was imposed for an offense for which there is no sentencing guideline. In short, Lloyd fails to provide any clue as to why or how the district court's use of the career offender provisions was "improper." This claim of error is insufficient to permit appellate review, and I would so hold.