**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Tobias Marco PRUITT (95–5983); Cory D. Evans (95–6393); John Herbert Talley, a/k/a Hot Rod (96–5222); Michael Clay (96–6026); Kelcey Tramayne Kendrick (96–6337), Defendants–Appellants.**

Nos. 95–5983, 95–6393, 96–5222, 96–6026 and 96–6337.

United States Court of Appeals, Sixth Circuit.

Argued (95–6393; 96–5222/6026/6337) June 15, 1998.

Submitted (95–5983) June 15, 1998.

Decided Sept. 4, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 27, 1998.

Gregg L. Sullivan, Asst. U.S. Attorney (briefed), Office of U.S. Attorney, Chattanooga, TN, for Plaintiff–Appellee in docket No. 95–5983.

Gregg L. Sullivan, Asst. U.S. Attorney (argued and briefed), Office of U.S. Attorney, Chattanooga, TN, for Plaintiff–Appellee in docket Nos. 95–6393, 96–5222, 96–6026 and 96–6337.

Ashley L. Ownby (briefed), Cleveland, TN, for Defendant–Appellant in docket No. 95–5983.

Charles P. Dupree (argued and briefed), Chattanooga, TN, for Defendant–Appellant in docket No. 95–6393.

Henry D. Fincher (argued and briefed), Cookeville, TN, for Defendant–Appellant in docket No. 96–5222.

Neal L. Thompson (argued and briefed), Chattanooga, TN, for Defendant–Appellant in docket No. 96–6026.

R. Dee Hobbs (argued and briefed), Bell, Turner & Hobbs, Chattanooga, TN, for Defendant–Appellant in docket No. 96–6337.

Before: WELLFORD, MOORE, and CLAY, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

The five defendants in these consolidated appeals, Tobias M. Pruitt, Cory D. Evans, John Herbert Talley, Michael Clay, and Kelcey Tramayne Kendrick, raise a number of challenges to their respective convictions and sentences. The defendants were part of a drug conspiracy involving the sale of crack cocaine. Pruitt, Evans, Clay, and Kendrick pleaded guilty. In light of *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), all four of these defendants' convictions under 18 U.S.C. § 924(c) for carrying or using a firearm during and in relation to the drug conspiracy were vacated. Clay and Kendrick, however, had their sentences enhanced pursuant to U.S.S.G. § 2D1.1(b)(1) for possessing a firearm in connection with the drug conspiracy. These four defendants now raise various challenges to their sentences on appeal. Talley was convicted in a trial by jury and now appeals his conviction and sentence based on ineffective assistance of counsel, the application and constitutionality of 21 U.S.C. § 841(b), and a separate state law claim. For the reasons discussed below, we **AFFIRM** the convictions and sentences of all of the defendants; we do not, however, address the merits of defendant Talley's ineffective assistance of counsel claim.

## I. FACTS AND PROCEEDINGS

These five defendants, along with nine other individuals, were indicted by a federal grand jury in Chattanooga, Tennessee, on December 6, 1994. The defendants had been under investigation for some time by the Federal Bureau of Investigation for their alleged involvement in a drug-selling conspiracy. The facts related to the criminal activity of the individual defendants are discussed below in the sections dealing with their individual claims.

The thirty-three count indictment included a charge in Count 1 against all of the defendants for conspiring to possess with intent to distribute crack cocaine from at least October 1992 to on or about December 20, 1993, in violation of 21 U.S.C. § 841(a)(1). All of the defendants were also charged in Count 2 with conspiracy to use and carry firearms during and in relation to the drug conspiracy in violation of 18 U.S.C. § 924(c). Defendants Clay and Kendrick were also charged with substantive 18 U.S.C. § 924(c) violations.

Pruitt entered a written plea agreement with the government wherein he pleaded guilty to Counts 1 and 2. On July 6, 1995, he was sentenced to a total of 120 months' imprisonment followed by a five-year period of supervised release. He filed a timely notice of appeal on July 10, 1995.

Evans pleaded guilty to Counts 1 and 2 and was sentenced to 292 months' incarceration, followed by a five-year period of supervised release. His sentence reflected a downward departure for his cooperation. Evans filed a notice of appeal on August 25, 1995.

Clay pleaded guilty to Counts 1 and 32, and he was sentenced to 130 months' incarceration, followed by supervised release for five years. His sentence reflected a downward departure for cooperation with the government. Clay filed a notice of appeal on September 5, 1995.

Kendrick pleaded guilty to Counts 1 and 31 and was sentenced to 195 months' incarceration followed by supervised release for five years. Kendrick filed a notice of appeal on September 5, 1995.

Talley was convicted by a jury trial of Count 1 and Counts 20 and 21 (use of a communications facility to facilitate a drug felony). The jury acquitted Talley of Count 2, conspiracy to use and carry firearms during and in relation to a drug trafficking offense.· Because Talley had been convicted of at least two previous felony drug offenses and trafficked in excess of fifty grams of crack cocaine in the present case, he was sentenced to life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). Talley filed a notice of appeal on December 12, 1995.

We granted motions filed by Pruitt, Clay, Evans, and Kendrick to remand to the district court so that they could file motions to vacate their § 924(c) convictions based on the intervening Supreme Court decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Talley did not request a remand.

Pruitt filed a motion with the district court after the remand objecting to his conviction under Count 2, the § 924(c) conviction. His conviction was vacated. Evans filed a motion pursuant to 28 U.S.C. § 2255, *see* R. 346 (Evans Pet.), and a motion after remand objecting to his conviction under Count 2. His conviction on this charge was also vacated. Both Pruitt's and Evans's sentences remained the same because their sentences on Count 2 were to run concurrently with their longer Count 1 sentences.

Clay filed a motion pursuant to 28 U.S.C. § 2255 to vacate his § 924(c) conviction. The government conceded that Clay's § 924(c) conviction should be vacated, and the district court therefore vacated his Count 32 conviction for a violation of § 924(c). Having found that Clay possessed a firearm in connection with drug trafficking, however, the district court imposed a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). His overall sentence was thereby reduced by twenty-two months. Clay then renewed his notice of appeal.

The government opposed a similar motion made by Kendrick, arguing that his actions satisfied the *Bailey* test for a § 924(c) violation. The district court vacated the § 924(c) conviction, but it imposed a two-level en-

hancement pursuant to U.S.S.G. § 2D1.1(b)(1) after holding a sentencing hearing. Kendrick's revised sentence reflected a decrease of fifteen months' incarceration from his original sentence. Kendrick renewed his notice of appeal.

The appeals of all of the defendants were consolidated by order of this court on October 15, 1996. The defendants have raised a number of arguments challenging their convictions and sentences. Because the aggregation of the drug amounts attributable to Talley presents the most significant issue in these cases, we begin with this issue.

## II. ANALYSIS

### A. THE APPLICATION OF 21 U.S.C. § 841(b)(1)(A) TO TALLEY

Talley objects to the application of 21 U.S.C. § 841(b)(1)(A) and to the constitutionality of this section on several grounds. For Talley, the pertinent part of § 841(b)(1)(A) provides for a mandatory life sentence for defendants who have been convicted of possessing with the intent to distribute cocaine base if the present case involves fifty grams or more of cocaine base and the defendant has two or more prior convictions for felony drug offenses that have become final. *See* 21 U.S.C. § 841. Each of Talley's challenges is addressed below in turn.

### 1. THE AGGREGATION OF THE DRUG AMOUNTS ATTRIBUTED TO TALLEY

Section 841(b)(1)(A) of Title 21 mandates minimum sentences for people convicted of crimes involving large quantities of drugs. It states,

In the case of *a violation* of subsection (a) of this section [prohibiting possession or sale of controlled substances] involving ... 50 grams or more of a mixture ... which contains cocaine base ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years.... If any person commits a violation of this

subparagraph ... after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release.

21 U.S.C. § 841(b)(1)(A) (emphasis added). Section 846 provides, "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

Talley argues that under *United States v. Winston*, 37 F.3d 235 (6th Cir.1994), the district court erred in sentencing him to a mandatory life sentence on the basis of 21 U.S.C. § 841(b)(1)(A).[1] *Winston* held:

It is obvious from the statute's face—from its use of the phrase "a violation"—that this section refers to a single violation. Thus, where a defendant violates subsection (a) more than once, possessing less than 50 grams of cocaine base on each separate occasion, subsection (b) does not apply, for there is no single violation involving "50 grams or more" of cocaine base. This is true even if the sum total of the cocaine base involved all together, over the multiple violations, amounts to more than 50 grams.

*Id.* at 240. The defendant in *Winston* had conspired with another person to sell twenty-three grams of cocaine base, and police found an additional thirty-seven grams stored at his home. There was no evidence that he and the other defendant had sold drugs together on any other occasion, and the thirty-seven grams in Winston's home were deemed not to be part of the conspiracy. This court held that the drugs involved in the separate counts against Winston—one count for conspiracy to possess twenty-three grams and another count for individual possession of thirty-seven grams—were not to be aggregated for purposes of § 841(b)(1)(A). Based on this holding, Talley argues that the district court erred when it aggregated the amount of crack cocaine for which it found

---

**1.** Talley did not raise this issue before the district court, nor did he raise the issue before this court except in a FEDERAL RULE OF APPELLATE PROCEDURE 28(j) motion to submit supplemental authority.

Because the *Winston* court raised this claim sua sponte in the interest of justice, *see Winston*, 37 F.3d at 241, we asked both parties prior to oral argument to prepare to address this issue.

Talley directly responsible to reach a total amount over fifty grams. There is no evidence in the record that Talley ever sold or possessed more than fifty grams at any one time.

 Unlike Winston, Talley was part of a single drug conspiracy involving the same coconspirators on numerous occasions. He was convicted of a single count of conspiracy to violate § 841(a), and the district court found that as part of his conspiracy charge, he was personally responsible for "well in excess of 50 grams of crack or cocaine base." J.A. at 593 (Talley Sent. Tr.). This case thus presents a different issue from *Winston*. We must decide whether a conspiracy involving multiple overt acts is nonetheless "a violation" of § 841(a).

The Fourth Circuit briefly discussed this issue in *United States v. Irvin*, 2 F.3d 72 (4th Cir.1993), *cert. denied*, 510 U.S. 1125, 114 S.Ct. 1086, 127 L.Ed.2d 401 (1994). The court considered in *Irvin* whether all drugs sold pursuant to a conspiracy should automatically be aggregated for each defendant, or whether there should be individualized consideration of each defendant's culpability. In deciding for individualization, the court also mentioned—as a way of illustrating the ambiguity of the statute—that one could decide not to aggregate at all. It rejected this option because "it could result in different penalties for different conspiracies although each conspiracy involved the same quantity of narcotics." *Irvin*, 2 F.3d at 76 n. 6.

We do not think that disaggregation of the amounts involved in a drug conspiracy is so plainly contrary to § 841(b)(1)(A). The purpose of the quantity thresholds is "to target major drug traffickers and manufacturers, kingpins, and masterminds of criminal organizations.... [Congress] 'selected quantities of drugs which if possessed by an individual would likely be indicative of operating at such a high level.'" *Winston*, 37 F.3d at 241 (quoting legislative history). This focus on the nature of individual transactions could be applied to a conspiracy case, on the rationale that a conspiracy of street-level dealers who sell small quantities should be treated differently from an enterprise engaged in high-level distribution. The conspiracy pro-

vision in § 846 is "intended not to increase exposure for criminal punishment beyond that already available, but to synchronize the penalties for conspiracies and their underlying offenses by ensuring that a defendant who is charged with only conspiracy not be in a better position for sentencing than one who is charged solely with possession of the same amount of narcotics." *Irvin*, 2 F.3d at 77 (internal quotation and alteration marks omitted). Finally, an aggregation rule could give the government too much control over whether defendants will be eligible for § 841(b)(1)(A). Where evidence is gathered primarily through sales to informants, the government would be able to bring the total up to the fifty-gram threshold by lengthening the investigation, no matter the level at which a conspiracy was operating.

We cannot ignore, however, that a conspiracy is a single, unified offense. *See Braverman v. United States*, 317 U.S. 49, 52–53, 63 S.Ct. 99, 87 L.Ed. 23 (1942); *see also United States v. Broce*, 488 U.S. 563, 570–71, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). While a conspiracy may comprise several overt acts, it has a single overall objective. In many drug conspiracy cases, the conspiracy will be an on-going enterprise that comes to an end only because the participants are arrested. The on-going nature of the offense is what gives rise to some of our concerns expressed above. We do not believe, however, that Congress intended for organized criminal enterprises to escape the traditional rule that treats a conspiracy as a whole. *See Braverman*, 317 U.S. at 53, 63 S.Ct. 99. A person who "dabbles" in drug sales—selling thirty grams of cocaine base on one occasion and thirty grams on another, unrelated occasion—may reasonably be treated differently from a person who enters into an agreement to sell sixty grams. Because the agreement is to the entire amount, the conspirator's culpability is not reduced if the sixty grams are ultimately disposed of in a single sale or in several separate sales.

While a person who participates in a drug conspiracy does not necessarily agree to a specific amount in advance, no defendant may be held responsible for acts beyond the scope of his or her participation in the con-

spiracy. *See United States v. Myers,* 102 F.3d 227, 237 (6th Cir.1996) (citing *Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)), *cert. denied,* —— U.S. ——, 117 S.Ct. 1720, 137 L.Ed.2d 843 (1997). We believe that this rule provides adequate protection against the possibility that a less culpable, "small-time" seller of drugs will be caught up in the sweep of § 841(b) due to the acts of coconspirators. Indeed, we note that in this case the district court included only amounts for which Talley was directly responsible, rather than imputing to him the acts of other defendants, despite conviction on the conspiracy count. Although under *Winston* each of Talley's overt acts would be treated separately if the acts had been performed on an individual or ad hoc basis, Talley's participation in an organized conspiracy constituted a single violation of § 841(a). It was therefore proper for the district court to aggregate the amounts of drugs attributable to Talley and to impose a mandatory life sentence under § 841(b)(1)(A).

## 2. THE DISPARATE TREATMENT OF CRACK COCAINE AND POWDER COCAINE

Talley argues that the disparity in sentencing between cocaine and cocaine base under 21 U.S.C. § 841(b)(1)(A) is so lacking in reasonable basis that it is an arbitrary and capricious distinction, and as such violates his due process rights. This court has already held that "Congress's act [, in distinguishing cocaine and cocaine base,] was sufficiently rational to meet the demands of substantive due process." *United States v. Tinker,* 985 F.2d 241, 242 (6th Cir.1992) (quotation omitted), *cert. denied,* 507 U.S. 1040, 113 S.Ct. 1872, 123 L.Ed.2d 491 (1993). We therefore reject Talley's due process argument.

## 3. VIOLENT VERSUS NON-VIOLENT OFFENDERS

Talley argues that because 21 U.S.C. § 841(b)(1)(A) makes no distinction between violent offenders and non-violent offenders, it "is arbitrary and unreasonable, and violates the prohibition against punishments imposed without due process of law." Talley's Br. at

6. The section that Talley complains of calls for a mandatory sentence of life imprisonment for anyone convicted under the section for a violation involving more than fifty grams of cocaine base who has two previous felony drug convictions that have become final. *See* 21 U.S.C. § 841(b)(1)(A). This court upheld the constitutionality of the three-strikes-you're-out provision in *United States v. Hill,* 30 F.3d 48, 50 (6th Cir.1994), *cert. denied,* 513 U.S. 943, 115 S.Ct. 350, 130 L.Ed.2d 305 (1994). In addition, the Supreme Court in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), upheld the life sentence of a nonviolent recidivist drug trafficker. There is simply no support for the defendant's argument that a statute prohibiting drug trafficking and imposing penalties for such activity must draw a distinction between violent drug traffickers and non-violent drug traffickers.

## 4. THE MANDATORY NATURE OF § 841(b)(1)(A)

Talley also argues that 21 U.S.C. § 841(b)(1)(A) violates due process because it "upsets the traditional balance of power within the judicial system" by combining prosecutorial discretion with the mandatory sentencing components of § 841. Talley's Br. at 7. This argument is without merit. A statute that denies the court discretion in sentencing does not violate due process, even if this gives the prosecutor a great deal of discretion. *See Chapman v. United States,* 500 U.S. 453, 467, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (holding that Congress has power to divest court of sentencing discretion in noncapital cases); *United States v. Prior,* 107 F.3d 654, 659 (8th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 84, 139 L.Ed.2d 41 (1997); *United States v. Kratsas,* 45 F.3d 63, 68 (4th Cir.1995).

## 5. THE DOUBLE JEOPARDY ISSUE

Talley's final attack on § 841(b) is his argument that the sentence enhancement for previous drug convictions constitutes a violation of the Double Jeopardy Clause. The Supreme Court has upheld enhanced penalties for recidivists in noncapital cases. *See*

*Monge v. California,* —— U.S. ——, 118 S.Ct. 2246, 2250, 141 L.Ed.2d 615 (1998); *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948). This court, in a series of cases, has upheld enhanced sentences based on habitual offender statutes. *See, e.g., United States v. Mack,* 938 F.2d 678, 681 (6th Cir.1991) (no double jeopardy violation for sentencing guideline enhancement of sentence for other criminal activities); *Montgomery v. Bordenkircher,* 620 F.2d 127, 129 (6th Cir.1980) (no double jeopardy violation when Kentucky habitual criminal statute enhanced punishment based on previous criminal convictions), *cert. denied,* 449 U.S. 857, 101 S.Ct. 155, 66 L.Ed.2d 71 (1980); *see also United States v. Shaw,* 26 F.3d 700, 701 (7th Cir.1994) (no double jeopardy violation when "sentence enhanced by reference to a prior conviction"). "Because the habitual criminal statute defines a status and not a separate offense, the double jeopardy prohibition is inapplicable." *Montgomery,* 620 F.2d at 129; *see also Monge,* —— U.S. at ——, 118 S.Ct. at 2250.

## B. TALLEY'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

■ Talley argues that his right to counsel was violated because his trial counsel was unconstitutionally ineffective, and his conviction should therefore be vacated and the case remanded for a new trial. *See* Talley's Br. at 2–3. Generally, this court "will not review an ineffective assistance of counsel claim that is raised for the first time on appeal." *United States v. Straughter,* 950 F.2d 1223, 1234 (6th Cir.1991), *cert. denied,* 502 U.S. 1119, 112 S.Ct. 1238, 117 L.Ed.2d 471 (1992); *see also, e.g., United States v. Thomas,* 74 F.3d 701, 715 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 74, 136 L.Ed.2d 33 (1996). As this court has previously stated, such claims "are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255," where the parties "can develop an adequate record on the issue." *United*

**2.** This court has not addressed the issue of whether representation by an unlicensed attorney is a per se violation of the right to counsel. *See Blanton v. United States,* 94 F.3d 227, 234 (6th Cir.1996); *United States v. Whitesel,* 543

*States v. Daniel,* 956 F.2d 540, 543 (6th Cir. 1992); *United States v. Goodlett,* 3 F.3d 976, 980 (6th Cir.1993).

■■ This court has recognized an exception to this general rule when the existing record is adequate to assess properly the merits of the claim. *See United States v. Pierce,* 62 F.3d 818, 833 (6th Cir.1995), *cert. denied,* 516 U.S. 1136, 116 S.Ct. 965, 133 L.Ed.2d 886 (1996); *United States v. Goodlett,* 3 F.3d 976, 980 (6th Cir.1993); *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir. 1990). With respect to the merits of his claim, Talley argues that his counsel was not licensed to practice law, which he argues should be a per se violation.[2] In addition, he argues that his counsel failed to take appropriate action during the trial. Because resolution of both of these arguments requires assessing "allegations and evidence that are outside the record," *Straughter,* 950 F.2d at 1235, Talley's ineffective assistance of counsel claim should be first raised before the district court so that an adequate factual record may be developed.

## C. TALLEY'S STATE LAW CLAIMS

Talley argues that the rule of lenity and analogy to *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), require that Tennessee law be applied to this case. *See* Talley's Br. at 9. Talley contends that Tennessee law does not permit the conviction of a criminal defendant based upon uncorroborated testimony of a codefendant. Talley also argues that the uncorroborated testimony of his coconspirators was the only evidence to support the district court's attribution to him of more than fifty grams of crack cocaine for sentencing purposes. He argues that the district court therefore erred by including this amount in his sentencing.

■ As this court has previously held, "[w]e have no doubt that in a federal criminal prosecution federal standards are applied to determine the admissibility of evidence."

F.2d 1176, 1180 (6th Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977). It is not clear from the record, however, that Talley's trial counsel was not licensed to practice at the time he represented Talley.

United States v. Dudek, 530 F.2d 684, 689 (6th Cir.1976) (citing Wolfle v. United States, 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617 (1934); United States v. Turner, 497 F.2d 406 (10th Cir.1974), cert. denied, 423 U.S. 848, 96 S.Ct. 90, 46 L.Ed.2d 71 (1975); United States v. Woodall, 438 F.2d 1317 (5th Cir.1970), cert. denied, 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971); Fed.R.Crim.P. 26). Federal law permits the conviction of a defendant on the unsupported testimony of an accomplice. See United States v. Hayes, 49 F.3d 178, 181 (6th Cir.1995). There is nothing ambiguous about this rule, so it would be inappropriate to apply the rule of lenity in this case. See Bifulco v. United States, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980); United States v. Bass, 404 U.S. 336, 347, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

In the instant case, there was testimony from several coconspirators who testified that Talley bought and sold drugs. The prosecution also introduced a tape of an incriminating telephone conversation which indicated Talley was involved in the conspiracy. In addition, law enforcement officers testified that they observed Talley in possession of crack cocaine for sale and had recovered cocaine from Talley's residence. This evidence is sufficient to support Talley's conviction and the district court's attribution of more than fifty grams of crack cocaine to Talley for sentencing purposes. See supra part II.A.1.

## D. THE DRUG AMOUNTS ATTRIBUTABLE TO TALLEY AND KENDRICK

 Talley and Kendrick argue that the amount of drugs attributed to them was not supported by the evidence, and therefore the district court's findings were clearly erroneous. "The government has the burden of proving by a preponderance of the evidence the amount of drugs for which a defendant is accountable." United States v. Mahaffey, 53 F.3d 128, 131 (6th Cir.1995); see also United States v. Thomas, 49 F.3d 253, 259 (6th Cir.1995). "A court's approximation of the amount of drugs involved in a particular case is not clearly erroneous if supported by 'competent evidence in the record.'" Mahaffey,

53 F.3d at 132 (citation omitted). "A district court's determination of the quantity of drugs used to compute a defendant's sentence is a finding of fact that should not be rejected unless clearly erroneous." Thomas, 49 F.3d at 259.

### 1. TALLEY

 Talley's objection to the amount attributed to him is based on the district court's reliance on the testimony of Talley's coconspirators in determining the amount of drugs attributable to Talley. The quantity of drugs need not be demonstrated by physical evidence. Testimonial evidence is sufficient to support a finding as to the quantity of drugs attributable to the defendant. See United States v. Sanchez, 928 F.2d 1450, 1460 (6th Cir.1991).

 This court defers to the district court on credibility determinations unless they are "without foundation." United States v. Lucas, 889 F.2d 697, 700 (6th Cir. 1989) (quotation omitted). Because Talley does not suggest that the district court's credibility determinations in this case were without foundation, we affirm the district court's findings regarding the quantity of drugs attributable to Talley. See United States v. Nelson, 922 F.2d 311, 316 (6th Cir.1990) (district court's crediting coconspirator testimony concerning quantity of drugs sufficient to include amounts as relevant conduct), cert. denied, 499 U.S. 981, 111 S.Ct. 1635, 113 L.Ed.2d 731 (1991).

### 2. KENDRICK

 Although Kendrick did not contest the volume or type of drugs attributed to him below, he now contests both on appeal. Because these arguments were not raised below, we review them under a plain error standard of review. See Fed.R.Crim.P. 52(b). In United States v. Thomas, 11 F.3d 620, 630 (6th Cir.1993), cert. denied, 511 U.S. 1043, 114 S.Ct. 1570, 128 L.Ed.2d 214 (1994), we held that plain error analysis has four steps.

First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However,

if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings.

*Id.*

■ Kendrick first argues that the government has failed to carry its burden in proving that the cocaine involved was crack cocaine, rather than another form of cocaine base. In addition, he argues that the district court erred in holding him accountable for drug amounts distributed by others that were not foreseeable to him. *See* Kendrick's Br. at 21. At his original sentencing, however, Kendrick acknowledged reading the presentence report (PSR), which attributed approximately 1.63 kilograms of crack cocaine to him. Kendrick's counsel also acknowledged reading the PSR and stated, "We filed a notice of no objections to it." *See* J.A. at 475 (Kendrick Sent. Tr.).

■ Kendrick admittedly never objected to the attribution of 1.63 kilograms of crack cocaine to him during the district court proceedings. His entire objection to the quantity attributable to him is based on his response to a question during the hearing regarding his resentencing, in which he stated that the most the group had purchased in Atlanta while he was there was fourteen ounces of crack cocaine. This contradicts the PSR, which approximated Kendrick's involvement in the purchase of thirty-three ounces of crack cocaine. This court has stated that once a defendant has "expressly agreed that he should be held accountable" for the amount of drugs involved, "he cannot now challenge the court's factual finding on this issue." *United States v. Nesbitt*, 90 F.3d 164, 168 (6th Cir.1996). As in *Nesbitt*, Kendrick's filing of a notice of no objection to the PSR is an express admission of the amount and type of drugs attributed to him in the PSR. For this reason, we would affirm the sentence.

In addition, the amounts and quantities attributed to Kendrick were based on evidence of Kendrick's sales to cooperating witnesses and information obtained from codefendants. As indicated in our discussion of Talley's argument on this point, it is proper for the district court to rely on such testimonial evidence regarding the amount of drugs involved. Accordingly, we hold that the district court did not commit error with regard to the amount of drugs attributable to Kendrick.

■ Kendrick also argues that the district court did not make an adequate determination that he was selling crack cocaine rather than some other form of cocaine base. The cases upon which he relies for disputing whether crack cocaine or some other form of cocaine base was involved provide him little support. Some dealt with challenges at the district court level to the type of cocaine involved, and others involved ambiguous stipulations to cocaine base. *See, e.g., United States v. James*, 78 F.3d 851, 856 (3d Cir. 1996) (neither judge nor defendant referred to drugs as "crack"), *cert. denied*, —— U.S. ——, 117 S.Ct. 128, 136 L.Ed.2d 77 (1996); *United States v. Jackson*, 856 F.Supp. 176, 180 (S.D.N.Y.1994) (district court concluded that laboratory report evidenced low purity of cocaine and drug held not to be crack cocaine under Guidelines), *aff'd*, 59 F.3d 1421 (2d Cir.1995), *cert. denied*, 517 U.S. 1139, 116 S.Ct. 1428, 134 L.Ed.2d 551 (1996). In the present case, not only does the evidence demonstrate that crack cocaine was involved, as indicated in the PSR, but Kendrick admitted in his testimony that crack cocaine was involved. *See United States v. Washington*, 115 F.3d 1008, 1011 (D.C.Cir.1997) (holding no "obvious error" and distinguishing *James* on basis of "the presentence report's uncontested use of a clear technical term clearly defined in the governing rules (the Guidelines)"). We therefore hold that the district court did not err in attributing the quantity and type of cocaine base to Kendrick.

## E. SUFFICIENCY OF THE EVIDENCE TO ENHANCE EVANS'S AND KENDRICK'S SENTENCES FOR POSSESSION OF FIREARMS

■ Evans and Kendrick claim that there was insufficient evidence to prove that they

possessed firearms within the meaning of U.S.S.G. § 2D1.1(b)(1), which provides for a two-level enhancement in drug trafficking offenses. "A district court's finding that a defendant possessed a firearm during a drug crime is a factual finding" that we review for clear error. *United States v. Elder*, 90 F.3d 1110, 1133 (6th Cir.1996), *cert. denied*, ——— U.S. ———, 117 S.Ct. 993, 136 L.Ed.2d 873 (1997).

In *United States v. Hill*, 79 F.3d 1477 (6th Cir.1997), *cert. denied*, ——— U.S. ———, 117 S.Ct. 158, 136 L.Ed.2d 102 (1996), this court held:

> To apply the enhancement under section 2D1.1(b)(1), the government must establish that (1) the defendant actually or constructively "possessed" the weapon, and (2) such possession was during the commission of the offense. *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir.1991). "Constructive possession of an item is the 'ownership, or dominion or control' over the item itself, 'or dominion over the premises' where the item is located." *Id.* (citation omitted). "'Once it is established that a defendant was in possession of a weapon during the commission of an offense, a presumption arises that such possession was connected to the offense." *Id.* The burden then shifts to the defendant to show that "it is clearly improbable that the weapon was connected to the offense." *Id.* (citing U.S.S.G. § 2D1.1, application note 3).

*Hill*, 79 F.3d at 1485.

### 1. EVANS

 Evans objects to the enhancement of his sentence primarily on the grounds that there is no factual record because no sentencing hearing was held. We believe all of Evans's objections to be without merit. First, in Evans's original plea, which he did not and does not move to revoke, he admitted that he was involved with coconspirators who used firearms in connection with drug trafficking. As this court has held, " '[t]he possession of a gun by one coconspirator is attributable to another coconspirator if such possession constitutes reasonably foreseeable conduct.' " *United States v. Eld-*

*er*, 90 F.3d 1110, 1134 (6th Cir.1996) (quoting *United States v. Chalkias*, 971 F.2d 1206, 1217 (6th Cir.1992), *cert. denied*, 506 U.S. 926, 113 S.Ct. 351, 121 L.Ed.2d 265 (1992)). At sentencing, Evans did not object to the presentence report, which also indicated that Evans's codefendants "possessed and carried firearms in relation to drug trafficking" and that Evans knew of this activity and participated in the drug trafficking. *See* J.A. at 153 (Evans PSR).

 Evans objected to the PSR only on the basis of actual ownership of the firearms. As the district court indicated, actual ownership is not the issue; possession is sufficient. *See* J.A. at 426 (Mem. & Order 9/10/96) (citing *United States v. Hill*, 79 F.3d at 1485–86). Searches by law enforcement officials uncovered a Mac–90 .22 caliber semi-automatic rifle at Evans's home and two other semi-automatic weapons at the home of two coconspirators, Tony Summerow and Lafayette Faust. *See* J.A. at 150 (Evans PSR). The district court properly found that the government carried its burden under § 2D1.1(b)(1) of proving by a preponderance of the evidence that Evans possessed a firearm and that it was reasonably foreseeable to Evans that his "co-conspirators, Tony Summerow and Lafayette Faust, would possess firearms in furtherance of their drug-trafficking conspiracy." J.A. at 426 (Mem. & Order).

 Evans also objects that no evidentiary hearing was held. The district court, however, holds such an evidentiary hearing at its discretion. *See* FED.R.CRIM.P. 32(c)(1). Evans has not pointed to any evidence indicating that the district court's decision not to hold an evidentiary hearing in this case was an abuse of its discretion. We therefore uphold the enhancement of defendant Evans's sentence.

### 2. KENDRICK

Kendrick argues that although he possessed firearms and engaged in drug trafficking, he never possessed a firearm while engaging in drug trafficking. In addition, while admitting that he stored his guns at a codefendant's residence and that he stored

drugs at a codefendant's residence, he claims he never knew there were drugs present at the same time that he stored firearms.

■ There is ample evidence to support the district court's finding that a preponderance of the evidence indicated that Kendrick possessed a firearm during the time of the drug trafficking offense. First, Kendrick admitted to owning four or five guns, including several semi-automatic weapons. He also admitted that he gave a codefendant crack cocaine to protect his Cadillac automobile, which he purchased with drug money; taped telephone conversations from that day indicate that he also left the codefendant a firearm to use in protecting at least the vehicle if not additional cocaine. There was also evidence that Kendrick participated in a "rumble" involving firearms that originated, in part, from a dispute regarding drug trafficking. Kendrick admitted that he stored drugs and guns at the home of a coconspirator, Williejay Kaipo Kalaukoa. The district judge did not believe Kendrick's denials of knowledge that he stored guns at the homes of codefendants at the same time drugs were stored there. *See* J.A. at 645. Kendrick also admitted that he knew other members of the conspiracy were purchasing guns and storing them at various coconspirators homes. The presentence report indicated that members of the conspiracy, including Kendrick, possessed weapons while conducting drug trafficking.

Kendrick's claim that he was in possession of the firearms merely for the protection of himself, others, and his property does not satisfy Kendrick's burden of showing that "it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 commentary, applic. note 3. In light of this evidence, we affirm the district court's enhancement of Kendrick's sentence pursuant to § 2D1.1(b)(1).

## F. THE DISTRICT COURT'S REFUSAL TO GRANT A DOWNWARD DEPARTURE FOR PRUITT

■ Pruitt argues that, because he cooperated with the government, the district court abused its discretion by refusing to grant him a downward departure pursuant to U.S.S.G. § 5K2.0. *See* Pruitt's Br. at 3. This court has held that a district court's discretionary refusal to depart downward is generally not appealable, unless the district court mistakenly believed it did not have legal authority to depart downward. *See United States v. Ebolum,* 72 F.3d 35, 37 (6th Cir. 1995); *see also United States v. Isom,* 992 F.2d 91, 94 (6th Cir.1993); 18 U.S.C. § 3742(a)(3) (limiting defendant's right to appeal sentence to cases where sentence is "greater than the sentence specified in the applicable guideline range"). Pruitt does not claim that the district court thought it did not have discretion to make a downward departure.

■ Additionally, Pruitt does not contest the fact that the government's refusal to recommend a downward departure was based on Pruitt's withholding some information concerning his involvement in drug trafficking, in violation of his plea agreement. Pruitt also does not allege that the government's refusal to recommend a departure was motivated by any unconstitutional reasons. *See Wade v. United States,* 504 U.S. 181, 186, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992); *United States v. Johnson,* 46 F.3d 19, 21 (6th Cir.1995). We therefore affirm the district court's sentence of Pruitt.

## G. CORRECTION OF CLAY'S SENTENCE

Clay argues that because his petition to vacate his sentence pursuant to 28 U.S.C. § 2255 only addressed a single count, the § 924(c) count, the district court did not have jurisdiction to reopen and resentence him on an unchallenged count of his indictment. Clay also argues that the district court's resentencing based on his possession of a firearm constitutes a violation of his due process rights and the Double Jeopardy Clause. In *Pasquarille v. United States,* 130 F.3d 1220 (6th Cir.1997), this court flatly rejected all of these same challenges and joined every other circuit court in upholding re-sentencing under such circumstances. Under *Pasquarille,* the district court properly resentenced Clay pursuant to U.S.S.G. § 2D1.1(b)(1).

### III. CONCLUSION

For the reasons stated above, we **AF-FIRM** the convictions and sentences of all of the defendants, but we do not consider defendant Talley's ineffective assistance of counsel claim.