UNITED STATES of America,
Plaintiff–Appellee,

v.

Lee Roy BENNETT, Jr., Defendant–
Appellant.

No. 00–5637.

United States Court of Appeals,
Sixth Circuit.

Oct. 30, 2001.

Before MERRITT and DAUGHTREY, Circuit Judges, and WELLS,* District Judge.

PER CURIAM.

The defendant, Lee Roy Bennett, was convicted of two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). His conviction was based, in part, on a statement he made to a law enforcement officer prior to trial that was introduced at trial over his objection, and he appeals the district court's denial of his motion to suppress that statement. The defendant also appeals his sentence, which was the result of three enhancements to the base offense level: a two-level enhancement for possession of five to seven firearms, pursuant to U.S.S.G. § 2K2.1(b)(1)(B); a two-level enhancement for a stolen firearm, pursuant to U.S.S.G. § 2K2.1 (b)(3); and a fourlevel enhancement for using or possessing a firearm in connection with another felony offense, pursuant to U.S.S.G. § 2K2.1 (b)(5). In addition, he contends that the evidence is legally insufficient to support the verdict. We find no error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 9, 1998, Steve Rock's home in Mountain City, Tennessee, was burglarized, Six rifles, two shotguns and three black powder rifles were stolen. Sgt. David Cornett, at the time an investigator with the Johnson County Sheriff's Department, was assigned to investigate the burglary. During his investigation, Cornett recovered one of the missing weapons from the attic of Lee Roy Bennett's mother's home. Further, Cornett received information from several individuals that Bennett might be in possession of the other stolen weapons. Cornett knew that Bennett had a prior felony conviction and suspected that he might have been involved in the burglary of Rock's home.

Some six weeks after the Rock burglary, Cornett spotted Bennett at the Mountain City Courthouse, approached Bennett, and told him that he needed to talk to him about the stolen weapons. Cornett asked Bennett to accompany him to his office in the Johnson County Sheriff's Office, which was approximately 50 feet away from the courthouse.

Bennett followed Sgt. Cornett to his office, where Cornett again told Bennett that he suspected that Bennett knew about the stolen guns. Cornett testified that he further told Bennett that he was not under arrest and that he was free to leave at any time. Bennett's account of the meeting was different. He testified that he did not remember being told that he was free to leave. In addition, Bennett testified that he was told that if he did not give a statement he would be arrested.

While in the sheriff's office, Cornett asked Bennett to identify several guns and to give a written statement, and Bennett complied. In his statement, Bennett admitted to the purchase and possession of several firearms that met the descriptions of the firearms missing from Rock's home. The encounter at the sheriff's office lasted a total of 15–30 minutes. However, during this time, Bennett was never given *Miranda* warnings.

Bennett filed a timely motion to suppress the statement before trial, and fol-

---

* The Hon. Lesley Brooks Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

lowing a suppression hearing, the magistrate judge issued a written report and recommendation that the district court deny the suppression motion. The magistrate judge credited the testimony of Sgt. Cornett and specifically discredited the defendant's testimony. The district judge adopted the report and recommendation and denied the defendant's suppression motion.

Bennett went to trial on a four-count indictment that included three "felon-in-possession" counts (count one relating to a Marlin rifle, count three a 10mm pistol, and count four a .323 caliber pistol), and a fourth count of "possessing a firearm knowing that it was stolen" (referring to the Marlin rifle in count one). Underlying all of the charges in the indictment was the fact that Bennett had been previously convicted on two felony counts of sale and delivery of cocaine.

### Count One: Possession of the Marlin Rifle

At trial, Officer Tim Tester, an investigator with the First Judicial District Drug Task Force, testified that on June 22, 1998, in the presence of Tina Miller, Bennett's ex-girlfriend, he recovered a Marlin lever-action rifle from the home of Bennett's mother. Tina Miller testified that Bennett had purchased the Marlin lever-action rifle in her presence sometime after April 1998. Sgt. Cornett testified that in his pre-arrest statement, Bennett identified the Marlin rifle that was recovered from his mother's home as his own and admitted that he had possessed the Marlin rifle, along with three other guns, in 1998. An additional witness for the government, Benjamin Miller, testified to having seen Bennett in possession of the Marlin rifle, along with three other firearms.

ATF Special Agent Bernard Waggoner testified that he examined the Marlin rifle and determined that it was an operable firearm. He further testified that the weapon was manufactured outside of the state of Tennessee.

By contrast, Kimberly Bennett Townsend, Bennett's sister, testified for the defense that she had purchased the Marlin rifle in question and placed it in her mother's attic. Misty Bennett, Kimberly and Lee Roy's sister, testified that she was with Kimberly when Kimberly purchased the firearm. Neither of these witnesses could recall details of the transaction. The jury discredited their testimony and convicted Bennett on this count.

### Count Two: Possession of a Stolen Weapon (the Marlin Rifle)

Steve Rock testified that his home was burglarized on April 9, 1998. Six rifles, two shotguns, and three black powder rifles were stolen, including a Marlin 30A .30–.30 caliber level-action rifle. Rock also testified that Audrey Leonard, Bennett's sister, and her husband rented the house next to Rock's residence at the time of the burglary. Rock said that he did not know Bennett and was not aware of who had burglarized his home, but that he suspected that Audrey Leonard and her husband may have been involved.

The Marlin rifle stolen from Rock was later recovered from the home of Bennett's mother. Bennett admitted that the gun had been in his possession, but he was nevertheless acquitted on this count.

### Count Three: Possession of the 10mm Pistol

Officer Tester testified that on May 6, 1998, he executed a search warrant at the home of Helen Cobb and David Dugger in Mountain City, Tennessee, and recovered a Thompson Auto Ordnance 10mm semi-automatic pistol from an outbuilding at the residence. In his June 24, 1998, statement, Bennett stated that he had received

the pistol from David Dugger and identified the firearm that had been recovered from the outbuilding as the weapon that he had previously possessed. Benjamin Miller testified that he had seen Bennett carrying the 10mm pistol in Spring of 1998.

ATF Special Agent Bernard Waggoner testified that he had examined the pistol and that it was an operable firearm. He further testified that the weapon was manufactured outside of the state of Tennessee. Bennett was convicted on this count.

### Count Four: Possession of the .323 Caliber Pistol

Benjamin Miller testified that he had also seen Bennett in possession of a small silver colored .32 caliber semi-automatic pistol in the spring of 1998. Lucy Miller, Tina Miller's mother, testified that on June 21, 1998, Bennett struck her in the head with a small silver-colored handgun and threatened to kill her. However, Jimmy Hanson, a witness for the defense, testified that the defendant was fishing with him at Watauga Lake that day.

Beverly Rhymer testified that during the evening of June 29, 1998, Bennett pointed a small silver-colored handgun in her face as he threatened both her and her daughter.

Bennett was acquitted on this count.

### Sentencing

Following his conviction on counts one and three, the district court, in conformity with the recommendations in the pre-sentence report, increased Bennett's base offense level by eight levels: two levels pursuant to U.S.S.G. § 2K2.1(b)(1)(B), because the offense involved between five and seven firearms; two levels pursuant to U.S .S.G. § 2K2.1(b)(4), because the offense involved a stolen firearm; and four levels pursuant to U.S.S.G. § 2K2.1(b)(5), because a firearm was used in connection with another felony offense. The defen-dant timely objected to all of the enhancements.

In adopting the recommendations of the pre-sentence report, the district court specifically credited the testimony of Sgt. Cornett and Benjamin Miller in applying the quantity of firearms enhancement. The district court further found that Rock's testimony supported the stolen firearm enhancement. Finally, the district court concluded that the testimony of Lucy Miller and Beverly Rhymer supported the four-level enhancement for using a firearm in the commission of another felony, namely, assault. Accordingly, the defendant was sentenced to 120 months on count one and 30 months on count three, the two sentences to be served consecutively.

### DISCUSSION

### Denial of the Motion to Suppress the Statement

We review the district court's determinations on the admission of evidence for abuse of discretion. *See United States v. Bonds,* 12 F.3d 540, 554 (6th Cir.1993). When reviewing a district court ruling on a suppression motion, we must uphold the factual findings of the district court unless they are clearly erroneous, while reviewing the legal issues de novo. *See United States v. Watkins,* 179 F.3d 489, 494 (6th Cir.1999).

The ultimate test for determining if a confession is admissible is to determine of the confession was voluntary, considering the "totality of the circumstances." *See Arizona v. Fulminante,* 496 U.S. 903, 110 S.Ct. 2583, 110 L.Ed.2d 264 (1990). A variety of factors must be considered when determining if a confession was voluntary; the defendant's age, education and intelligence, whether the defendant was advised of his constitutional rights; the length of questioning; the nature if the questioning,

and the use of physical deprivation. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). *See also* 18 U.S.C. § 3501(b). When a defendant challenges the voluntariness of a confession the government must prove voluntariness by a preponderance of the evidence. *See Lego v. Twomey,* 404 U.S. 477, 482–84, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

■ The defendant correctly acknowledges that the Sixth Circuit recognizes three requirements for a finding that a confession was involuntary due to police coercion: (1) that the police activity was objectively coercive; (2) that the coercion in question was sufficient to overbear the defendant's will; and (3) that the alleged police misconduct was the crucial motivating factor in the defendant's decision to make the statement. *See McCall v. Dutton,* 863 F.2d 454, 459 (6th Cir.1988). We conclude that Bennett fails to establish any of these three requirements.

The testimony of Sgt. Cornett, fully credited by the magistrate judge, clearly established the voluntariness of the statement by a preponderance of the evidence. Most significantly, Sgt. Cornett testified that he informed the defendant that he was free to leave at any time and that he was not under arrest. Sgt. Cornett also explained that he escorted the defendant to his office in order to facilitate the identification of the weapons and that the office door remained unlocked throughout the interview. It is also significant that the interview lasted no more than 30 minutes and was close in proximity to the defendant's initial location. The record indicates that the defendant had prior knowledge of the criminal justice system and gives no indication of a lack of understanding or intelligence on his part. Simply put, there is no indication in the record to indicate that Sgt. Cornett's actions were objectively coercive.

■ The defendant next argues that his confession was taken in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This claim is also without merit. In order for an interrogation to trigger the need for *Miranda* warnings, it must be custodial. *See id.* at 461. For an interrogation to be considered custodial, the detention must be commensurate with a formal arrest, as judged by the perspective of a reasonable person. *See Combs v. Coyle,* 205 F.3d 269, 284 (6th Cir.2000). Therefore, the relevant inquiry hinges on whether a reasonable person in the defendant's position would have felt free to terminate the interrogation and leave. *See Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). Bennett's testimony that he did not feel free to leave, while relevant, is not sufficient to support a finding that the setting was custodial. In this case, Sgt. Cornett's explicit directive that the Bennett was free to leave at any time, found credible by the lower courts, makes it difficult to believe that a reasonable person would have felt that he or she were under arrest.

### The Sufficiency of the Evidence

■ Bennett also argues that evidence to support the jury verdicts on counts one and three of the indictment was insufficient as a matter of law. In assessing the sufficiency of the evidence, we must determine whether, after viewing all of the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Layne,* 192 F.3d 556, 567 (6th Cir.1999).

In order to find a defendant guilty of 18 U.S.C. § 922(g)(1), the proof must establish the following elements: (1) that the defendant had a previous felony conviction;

(2) that the defendant possessed a firearm; and (3) that the firearm had traveled in or affected interstate commerce. *See United States v. Moreno*, 933 F.2d 362, 372 n. 1 (6th Cir.1991). As to both count one and count three, the first element was met by stipulation, the second was admitted in the defendant's confession and corroborated by further witness testimony, and the third was the subject of uncontested testimony. The defendant's insufficiency claim thus fails.

### Sentencing Enhancements

The sentencing court's findings of fact related to sentencing guideline enhancements are reviewable only for clear error. *See United States v. Eve*, 984 F.2d 701, 703 (6th Cir.1993). Accordingly, we must defer to credibility determinations related to sentencing issues made by the district court unless they are without foundation. *See United States v. Pruitt*, 156 F.3d 638, 647 (6th Cir.1998).

### Number of Firearms

■ Bennett contends that the district court's application of a two-level enhancement, pursuant to U.S.S.G. § 2K2.1(b)(1)(B), for an offense involving five to seven firearms was clearly erroneous. In applying the enhancement, the district court relied on the testimony of Sgt. Cornett and Benjamin Miller, finding by a preponderance of the evidence that the defendant possessed six firearms.

In his June 24, 1998 statement, Bennett admitted to the possession of four firearms. Additionally, Miller testified that the defendant had given him a bundle of four firearms, one of which matched the description of a firearm that Bennett admitted to possessing, for safe-keeping. Having credited this testimony, the district court could reasonably conclude that the defendant had possessed five to seven fire-

arms and properly enhance his sentence in this regard.

### Firearm in Connection with Another Felony Enhancement

■ Bennett also objects to the four-level increase in his offense level for the use of a firearm in connection with another felony offense pursuant to § 2K2.1(b)(5). Based on the trial testimony of Lucy Miller and Beverly Rhymer, the district court found that the defendant had used a firearm in two aggravated assaults. Bennett argues that because he was acquitted of count four of the indictment, regarding possession of the firearm involved with the assaults on Miller and Rhymer, his sentence cannot be enhanced for such conduct. This argument fails for several reasons.

It is well-settled that a sentencing court may consider acquitted conduct in determining an appropriate sentence. *See United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (holding that because the standard of proof at sentencing is the preponderance of the evidence rather than beyond a reasonable doubt, evidence related to acquitted conduct may be useful at sentencing). In this case, the weapon related to the possession charge in count four was never recovered by law enforcement officials, but it was the subject of testimony by three different witnesses. The jury could reasonably have concluded that the lack of recovery and testing of the weapon created doubt as to the possession charge. However, that decision does not render *un* reasonable the district court's decision to credit evidence that the defendant not only possessed the weapon, but used it to commit assault. As the district court explained, "The [c]ourt had the opportunity to hear the witnesses and finds, by a preponderance of the evi-

. .

dence, that these assaults did, in fact, occur."

Bennett also argues that the district court erred in determining that the weapon addressed in the testimony of Lucy Miller and Beverly Rhymer was a "firearm" subject to enhancement under § 2K2.1(b)(5). This argument, which was not raised before the district court, is subject to review under the clear error standard. Fed.R.Crim.P. 52(b). However, we find that the argument is without merit. Although the defendant correctly points out that lack of recovery of the firearm made testimony concerning its operability impossible, significant circumstantial evidence in the record made it reasonable for the trial judge to find that the "pistol" addressed in the testimony was a firearm. Indeed, three witnesses referred to the object in question as a firearm. Furthermore, Miller testified that the Bennett threatened to shoot her with the pistol, making a finding of operability reasonable.

█ Bennett's final argument concerning the four-level enhancement is that its application violated the rule articulated in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The Supreme Court held in *Apprendi* that, "other than the fact of a prior conviction, any fact that *increases the penalty for a crime beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 488, 120 S.Ct. 2348 (emphasis added). The defendant in this case did not receive a sentence greater that the statutory maximum on either count. Rather, the 120 months he received on count one was equal to the statutory maximum of ten years, and the 30 months he received on count three was well below the maximum. The consecutive nature of the sentences, governed by § 5G1.2(d) of the Sentencing Guidelines,[1] does not create a total punishment period greater than the statutory minimums of the two jury-convicted offenses. Accordingly, *Apprendi* is inapplicable. *See United States v. Corrado*, 227 F.3d 528 (6th Cir.2000) (holding that *Apprendi* is not triggered where defendants' sentences did not exceed the statutory maximum).

### CONCLUSION

In this case, the district court made specific credibility determinations and factual findings that preclude relief on virtually every claim that the defendant raises on appeal. The defendant failed to demonstrate that any of those decisions were erroneous. Further, the district court ruled correctly that the sentence imposed does not violate the holding in *Apprendi*. Accordingly, for the reasons set out in detail above, we AFFIRM the judgment of the district court.

---

1. "If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, than the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment...." U.S.S.G. § 5G1.2(d).